611 A.2d 749

**Leroy WESTBROOK and Bobbie Lou Westbrook, his Wife**

**v.**

**John W. ROBBINS and Julius Young and Ralph D. Narcisi and Pennsylvania Financial Responsibility Assigned Claims Plan.**

**Appeal of PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 31, 1991.

Filed June 24, 1992.

544

A. Richard Feldman, Philadelphia, for appellant.

Francis X. Dochney, Philadelphia, for appellee West-brook.

Before ROWLEY, President Judge, and CAVANAUGH, WIEAND, CIRILLO, OLSZEWSKI, KELLY, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge.

This is an appeal from the April 17, 1990 order of the Court of Common Pleas of Philadelphia County, denying the Pennsylvania Financial Responsibility Assigned Claims Plan's (hereinafter "PACP") motion for post-trial relief, and entering judgment against it in the amount of $6,357.50 for interest and attorney's fees. We reverse.

This case arises from an accident that occurred on March 30, 1987. Appellee, Leroy Westbrook, suffered injuries while riding as a passenger in a car owned by Julius Young and operated by John Robbins. The vehicle being driven by Robbins collided with a vehicle operated by Ralph Narcisi.

Appellee, within a month after the accident, submitted an application for benefits to the PACP. The PACP assigned the claim to Travelers Insurance Company as its adjusting agent for evaluation and processing. Travelers notified Westbrook's counsel of the assignment by letter dated May 26, 1987. On July 23, 1987, a Travelers' claims representative wrote to Westbrook's counsel requesting that counsel provide proof that the Young vehicle was uninsured. There is significant disagreement between the parties as to when Travelers received notice that the Young vehicle was uninsured.

Eventually, on February 8, 1988, Westbrook filed a complaint against Young, Robbins, Narcisi, and the PACP. By that point it had been nine months since Westbrook had first submitted a claim for benefits to the PACP, and, as yet, he had received nothing. Finally, on December 28, 1988, nineteen months after initially submitting a claim for benefits, and just prior to the scheduled arbitration date, Travelers paid Westbrook a sum of $5,000.00 in first party benefits.

At the arbitration hearing the board found, *inter alia*, in favor of Westbrook and against the PACP for an amount of attorney's fees and costs, together with twelve percent per annum interest on plaintiff's first party benefits for the period that benefits were due but unpaid.

The PACP took a statutory appeal to the Court of Common Pleas of Philadelphia County. A bench trial was held on June 29, 1989, before the Honorable Charles A. Lord. On September 14, 1989, the trial court issued an Order and Opinion finding in favor of Westbrook and against the PACP. The trial court awarded $5,557.50 in attorney's fees and costs, and $800.00 in interest.

The PACP filed post-trial motions which were denied by order of court dated April 17, 1990. This timely appeal followed.

Appellant raises three issues for our consideration.

I. Whether the Assigned Claims Plan is subject to liability for attorney's fees under the Motor Vehicle Financial Responsibility Law?

II. Whether the trial court's conclusion that Travelers, acting as the Assigned Claims Plan's adjuster, unreasonably refused to pay plaintiff's claim, was erroneous as a matter of law where it was undisputed that Travelers never refused to pay the claim, and Travelers in fact paid the claim in full within several months of first receiving evidence establishing plaintiff's eligibility for benefits?

III. Whether the Assigned Claims Plan is subject to liability for the 12% interest penalty under the Motor Vehicle Financial Responsibility Law?

We find that appellant's first and third issues present this court with questions of first impression. We shall address these issues simultaneously. Furthermore, our resolution of the first and third issues will render moot any consideration of appellant's second issue.

Appellant would have us reverse the trial court's award of interest and attorney's fees on the basis of this court's prior holding in *Williams v. Tuck*, 397 Pa.Super. 213, 579 A.2d 1332 (1990). According to appellant, the *Williams* court held that the Assigned Claims Plan and its assignees are not subject to the penalties of attorney's fees and interest under the MVFRL, and thus should provide suffi-

cient precedent for reversing the trial court in this instance. However, appellant tends to overstate the actual holding in *Williams.*

In *Williams, supra,* Gina Williams filed suit against Travelers Insurance Company seeking to recover first-party benefits and attorney's fees under the Assigned Claims Plan provisions of the MVFRL. Travelers was the company designated to handle Williams' claim under the Assigned Claims Plan. Williams raised the argument that Travelers was an "insurer" under section 1798(b). This court disagreed.

> The trial court concluded that since the insurer in this instance was the insurer designated to pay first party benefits pursuant to the Pennsylvania Assigned Claims Plan, 75 Pa.C.S. §§ 1751–57, it was not an 'insurer' under section 1798(b) and that the attorney's fees of appellant-claimant were not recoverable under that section. It based this conclusion on the fact that appellee and appellant had no insurer-insured relationship. We agree.

*Id.,* 397 Pa.Superior Ct. at 215, 579 A.2d at 1334.

The *Williams* court was only confronted with the issue of whether an assignee of the PACP could be held liable for interest and attorney's fees under the provisions of the MVFRL. To that end, the *Williams* court held:

> We determine that when the provisions of the MVFRL are read as a whole, it is clear that the legislature did not intend by enacting section 1798 to provide for attorney's fees against insurers assigned to claims arising under the Assigned Claims Plan and which have no policy of insurance issued to the claimant.

*Id.*

Thus, the holding in *Williams* is limited to the propriety of an award of attorney's fees against an assigned carrier under the PACP. However, in the present case, appellant presents us with a unique, albeit somewhat similar issue; namely, whether the Assigned Claims Plan, itself, can be held liable for interest and attorney's fees.

Both parties present a myriad of arguments to this court on the issue of the imposition of fees and costs against the PACP. This opinion will attempt to address all the relevant arguments in hope of minimizing the recurrence of these issues in the future.

First, the PACP argues that the MVFRL does not specifically provide that the PACP is subject to attorney's fees. According to the PACP, a review of the entire MVFRL reveals that it is devoid of any specific provisions subjecting it to the imposition of attorney's fees.

Appellees respond to this argument by noting that the PACP is subject to an imposition of attorney's fees by way of application of section 1798(b) of the MVFRL. Specifically, section 1798(b) provides:

> In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S.A. § 1798(b). According to appellees, the PACP qualifies as an insurer for purposes of this section, given that the PACP is no more than a collection of all the insurance companies who do business in Pennsylvania. Furthermore, the benefits paid out by the PACP are, in essence, first-party benefits as outlined in subchapter B of the MVFRL; therefore, since § 1798(b) specifically refers to unreasonable refusals to pay those benefits enumerated in subparagraph (a) (of which subchapter B first-party benefits are included), then the Plan can be liable for attorney's fees when there is an unreasonable delay in paying benefits.

█ The PACP offers several concrete responses to appellees's argument which we find persuasive. First, the PACP argues that the plain language of section 1798(b) makes clear the fact that it only applies to insurers. According to the PACP, it is not an insurer as that term is defined in the MVFRL. The MVFRL defines an "insurer"

or an "insurance company" as "[a] motor vehicle liability insurer subject to the requirements of this chapter." 75 Pa.C.S.A. § 1702. The PACP notes that it does not collect premiums nor provide liability insurance. When a statute provides its own internal definitions, we are bound to construe the statute according to those definitions. *See Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983). In this instance, the PACP does not fall within the statutory definition of an "insurer." While the PACP may be comprised of all insurance companies doing business in this Commonwealth, that fact alone does not make the PACP itself an insurer.

In the present case, there is no insurer-insured relationship between Westbrook and the PACP. Their relationship is created by statute, and must be defined accordingly. Under the applicable statutory language, the PACP is not an insurer.

Next, the PACP argues that even if it was to be considered an "insurer" for purposes of § 1798, the section still does not provide for the imposition of attorney's fees with respect to claims handled pursuant to the Assigned Claims Plan.

Recall that section 1798(b) only provides for the imposition of attorney's fees when an insurer has acted unreasonably in refusing to pay the benefits enumerated in section 1798(a). Section 1798(a) only refers to first party benefits under subchapter B of the MVFRL and catastrophic loss benefits under subchapter F of the MVFRL. Section 1798(a) makes no mention of subchapter E, Assigned Claims Plan benefits. The language of section 1798 is clear and unambiguous, and leads to the conclusion that section 1798(b) was not intended to apply to the Assigned Claims Plan situation.

Appellees argue that appellant's reading of the MVFRL is too isolated; that the various subchapters must be read in conjunction, and that when they are, it is clear that section 1798(b) applies to benefits payable through the Assigned Claims Plan. According to appellees, since section 1753,

which outlines the benefits available under the Assigned Claims Plan, specifically refers back to subchapter B, the benefits payable under the Assigned Claims Plan really are, in fact, subchapter B first-party benefits. Thus, given the interrelated nature of subchapters B and E, it is logical to conclude that section 1798(a), while only expressly listing subchapter B, can be interpreted to include subchapter E, thus making section 1798(b) applicable to the Assigned Claims Plan as well.

■ While appellees' argument may be persuasive, it requires too tortured an analysis of the MVFRL. As directed by the supreme court's decision in *Hackenberg v. Southeastern Pennsylvania Transportation Authority*, 526 Pa. 358, 586 A.2d 879 (1991), when construing the MVFRL it is important to pay close attention to the language of the act, itself, and the statute's organization into subchapters. *Hackenberg* involved the interpretation of section 1787, in subchapter I, of the MVFRL. Section 1787 requires self-insurers, such as SEPTA, to provide uninsured motorist coverage. The issue surrounded the application of section 1787 in a situation where an employee was injured in an accident for which he was receiving workmen's compensation benefits. SEPTA argued that it was not required to pay uninsured motorists benefits along with workmen's compensation benefits. Hackenberg urged the court to interpret section 1787 in conjunction with section 1735, which required that "[t]he coverages required by this subchapter shall not be made subject to an exclusion or reduction in amount because of any [workmen's] compensation benefits payable as a result of the same injury." The court rejected Hackenberg's broad reading of the MVFRL noting that section 1735, by its own language, only applies to subchapter C, which involved persons, employers, and others who had purchased policies of insurance. The court refused to utilize a provision in subchapter C to interpret a provision is subchapter I. *Id.*, 526 Pa. at 358, 586 A.2d at 879. Similarly, we will not now dilute the clear and unam-

biguous language of section 1798 by attempting the interpretation outlined by appellees.

Appellant's second major argument against the imposition of attorney's fees is in response to the trial court's reliance on provisions of the No–Fault Act to support its decision to impose fees against the PACP. This analysis is closely related to the previous discussion on whether the PACP is an insurer, as that term is used in section 1798. Both the trial court and appellees raise the argument that under the No–Fault Act, the predecessor to the MVFRL, an insurer assigned to a claim, under the Assigned Claims Plan, was deemed obligated to the claimant as if the assigned carrier, itself, had issued a policy of basic loss insurance to the claimant. Section 108 of the former No–Fault Act provided, *inter alia:*

> Claims shall be assigned so as to minimize inconvenience to claimants. The assignee thereafter has rights and obligations as if he had issued a policy of basic loss insurance complying with this act applicable to the injury
> . . .

40 Pa.S.A. § 1009.108(b)(2). According to the trial court, and appellees, when the Legislature reorganized the No–Fault Act by creating the MVFRL, it specifically saved section 108 from repeal. *See* 75 Pa.C.S.A. § 1751, Historical and Statutory Notes. Thus, according to appellees, the PACP is obligated to Westbrook as if it had issued a policy of insurance directly to him, because the No–Fault Act clearly demonstrates that the Plan is to be treated as an "insurer."

Appellant responds by noting that while the MVFRL did save section 108 of the No–Fault Act from repeal, it was only a certain part of that section which was saved. The plain language of the savings provision bears out appellant's contention. The savings provision of the MVFRL at issue provides that, notwithstanding the repeal of the No–Fault Act, "the requirement to fund the payment of assigned claims under section 108 of the act remains unaffected." Act of February 12, 1984, P.L. 26, No. 11, § 9. As

appellant notes, the savings clause merely saves from repeal that part of the section 108 which required funding of claims which arose under the No–Fault Act prior to October 1, 1984, and which are still accruing expenses. The savings provision guaranteed a continuation of funding during the change-over from the Assigned Claims Plan of the No–Fault Act to the MVFRL Assigned Claims Plan.

Furthermore, we find persuasive appellant's argument that the Assigned Claims Plan created by the MVFRL, although established for the same purposes, differs in its operation from the Plan as enacted by the No–Fault Act. Under the No–Fault Act, the insurance companies providing basic loss benefit coverage in this Commonwealth were required to organize an Assigned Claims Bureau, the responsibility of which was to assign a claim to a participating insurer and to notify the claimant to that effect. Thereafter, the insurer assumed all the obligations to the claimant as if it had issued a policy of insurance. *Tubner v. State Farm Insurance Co.*, 496 Pa. 215, 436 A.2d 621 (1981). Under the operation established for the Assigned Claims Plan under the MVFRL, "claims are not assigned to an individual insurance company. Rather, the Plan collects surcharges from all companies doing business in Pennsylvania and contracts with an individual company to handle a claim." Ronca, Sloane and Mundy, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law*, p. 78 (1986). Under this arrangement the carriers perform the function of claims adjusters for the Plan and assume no other responsibilities.

The final section of the MVFRL at issue between the parties is section 1716. Appellees maintain that section 1716 is applicable to the PACP and thus provides a conduit for the imposition of fees and interest. Section 1716, in subchapter B of the Act, provides for the imposition of attorney's fees and a penalty of 12% interest on benefits due, but not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. The trial

court specifically relied upon this section to support its award of interest.

Appellant presents several compelling arguments as to why section 1716 does not apply to the PACP. First, section 1716 applies only to insurers and the PACP is not an insurer. As discussed previously, we agree with appellant that for purposes of the MVFRL, the PACP is not an insurer. Second, appellant notes that section 1716 is located in subchapter B, and there is no corresponding section in subchapter E. According to appellant, this is further evidence that the Legislature did not intend the PACP to be subject to fees and interest awards. *See Lee v. Safeguard Mutual Insurance Co.*, 379 Pa.Super. 104, 117 n. 9, 549 A.2d 927, 933 n. 9 (1988) (where the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded). Appellant solidifies its point by noting that there are several parallel provisions in subchapters B and E.

For instance, each subchapter has provisions describing the types and amounts of benefits payable (compare § 1711 with § 1753); provisions governing eligibility (compare § 1714 with § 1752(a)) and ineligibility (compare § 1718 with § 1752(b)); provisions governing subrogation (compare § 1720 with § 1756); and provisions outlining limitations periods (compare § 1721 with § 1757). However, the attorney's fees and interest provision in subchapter B has no such parallel in subchapter E. The parallelism of the subchapters indicates the legislature intended each to stand on its own. Otherwise, there would have been no need to duplicate similar provisions in each subchapter. Thus, had the legislature intended subchapter E to include a provision for attorney's fees and interest, it would have inserted one. We will not now read such a provision into subchapter E.

Finally, with respect to the 12% interest provision of section 1716, appellant offers one other practical reason why that provision should not be interpreted to apply to the PACP through subchapter E. Section 1716 imposes the 12% interest penalty once a 30–day period expires after the

insurer receives proof of the amount of benefits. In the insurer-insured relationship envisioned by section 1716 in subchapter B, this 30–day period in which the insurer must evaluate and pay the claim makes sense. The insurance company will already have information on file concerning the insured and vehicle in question. Thus, it is a relatively simple matter for the company to evaluate the claim and verify benefits.

However, this same 30–day period is impractical in the arena of assigned claims. The Plan has no prior information on a claim when one is filed. This requires the plan to start its investigation from scratch. Furthermore, there are seven eligibility requirements which must be verified before benefits can be paid. *See* 75 Pa.C.S. §§ 1752(a)(1)–(a)(6). Unlike private policies of insurance, which are primary to any other health insurance, the benefits payable under the Plan are secondary to other forms of health coverage. Thus, an investigation into alternative forms of health coverage is also necessary. Therefore, in many cases, it would be impractical to impose the 30–day limit of subchapter B on the evaluation and payments of claims under the Assigned Claims Plan.

Finally, appellees raise public policy arguments as to why the PACP should be subject to the penalties of interest and fees when claims are not timely processed and paid.

Appellant counters by maintaining that since the PACP is a non-profit organization, there is no incentive on its part to delay in paying claims. Furthermore, according to appellant, the imposition of fees and interest would only serve to deplete the fund.

Pennsylvania has long followed the rule that absent a statutory provision to the contrary, each party to litigation is responsible for his own legal fees. In this instance, appellant has clearly demonstrated to this court that there are no provisions of the Act requiring the PACP or its assignees to pay legal fees or interests. We further find that any changes in response to the public policy concerns are more properly left to the legislature.

Accordingly, the order of the trial court denying appellant's post-trial motions is reversed. The judgment entered against the PACP is vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.