Aaron J. BLACKMAN, Appellant,

v.

Lionel WRIGHT, a/k/a Larnell Wright and Pennsylvania Financial Responsibility Assigned Claims Plan, Appellees.

Superior Court of Pennsylvania.

Argued June 16, 1998.

Filed Aug. 13, 1998.

**649**

Marc F. Greenfield, Philadelphia, for appellant.

Michael Senoyuit, III, Montgomeryville, for Pennsylvania Financial, appellee.

Before CAVANAUGH, STEVENS and HESTER, JJ.

CAVANAUGH, Judge:

This is a case of first impression in Pennsylvania and requires us to determine whether the intentional striking of an uninsured pedestrian by an uninsured driver can properly be considered a "motor vehicle accident" under the Assigned Claims Plan, 75 Pa. C.S.A. § 1751 et seq. Because we find such intentional action cannot be considered an "accident" under the statute, we conclude that the court properly determined appellant to be ineligible for statutory benefits and we affirm the order and judgment which denied appellant's post-trial motions.[1]

■ On May 9, 1994, appellant, Aaron J. Blackman, a pedestrian who did not own an automobile nor an automobile insurance policy, was injured when appellee, Lionel Wright, an uninsured motorist, intentionally drove a motor vehicle into Blackman, causing Blackman to suffer, among other things, a

fractured shoulder and a concussion. Blackman submitted a claim for benefits under the Pennsylvania Financial Responsibility Assigned Claims Plan (the Plan), 75 Pa.C.S.A. § 1751 et seq., which "[g]enerally ... provides benefits for those individuals injured in a motor vehicle accident who, through no fault of their own, have no other available source of insurance coverage." Penn. Assigned Claims Plan v. English, 541 Pa. 424, 429, 664 A.2d 84, 86 (1995). Blackman's claim was denied on the basis that his injury was not the result of a motor vehicle accident but rather, was the result of an intentional act.[2]

Blackman brought suit against the Plan. The case initially went to compulsory arbitration. The arbitration board found in favor of the Plan and against Blackman. He appealed and the parties stipulated to trial de novo on a "case stated" basis, agreeing to waive otherwise required post-trial motions. The stipulation also reflected the parties' agreement, inter alia, that Blackman's injuries resulted from Wright's "intentional act" and that if the court found Blackman to be an eligible claimant under the Plan, he would be entitled to "judgment in the amount of $15,-000[.]" The court found Blackman ineligible for benefits because the injuries he sustained were not the result of an accident but resulted from an intentional act.

Blackman did not file post-trial motions but filed a direct appeal to this court. We quashed the appeal for failure to file post-trial motions and noted that the stipulation of the parties which agreed to trial de novo on a "case stated" basis, was executed after our supreme court had abolished the procedural device of a "case stated" and provided for the submission of a case on stipulated facts, which requires post-trial motions to be filed

1. The docket reflects simultaneous entry of judgment on the verdict.

2. The Plan provides, in pertinent part:
   § 1752. Eligible claimants
   (a) General rule. –A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:
   (1) Is a resident of this Commonwealth.
   (2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).
   ....
   (6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to the availability of benefits) applicable to the injury arising from the accident.
75 Pa.C.S.A. § 1752.

prior to appeal. *See* Pa..R.C.P. 1038.1, adopted August 6, 1996, effective January 1, 1997. Thereafter, the trial court granted Blackman's request to file post-trial motions *nunc pro tunc* and upon consideration of the same, found them to be substantively meritless by order dated December 16, 1997. Blackman now appeals therefrom and raises a single issue for our review:

1. IS A CLAIMANT WHO IS OTHERWISE ELIGIBLE FOR BENEFITS UNDER THE PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN (75 Pa.C.S.A. § 1751 *et seq.*) ENTITLED TO SUCH BENEFITS EVEN IF THE TORTFEASOR, WHICH OPERATED THE VEHICLE WHICH STRUCK HIM, ACTED INTENTIONALLY?

◼ Appellant's issue is premised on the assertion and argument that he is an "insured" under the plan, and thus, that the intentional act which injured him .must be construed as an "accident," because appellant did not expect or desire to be hit by the vehicle. In support, appellant quotes *Mohn v. American Casualty Co.*, 458 Pa. 576, 578, 326 A.2d 346, 348 (1974) for the proposition that "[t]he test of whether an injury is the result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one who committed the injury." Appellant argues that "his *relationship* to the Plan is the same as an insured's relationship to [an] insurance company providing coverage to the insured." Appellant's Brief at 10 n. 4. (emphasis in original). Given that the injury-causing event, when seen from appellant's viewpoint, was neither expected nor desired, appellant argues that his injuries were the result of an "accident," and that he is, therefore, eligible for benefits under the Plan and that the court erred in finding to the contrary.[3]

◼ Appellant's contention is fundamentally flawed in its premise. It is clear that "[u]nder the applicable statutory language,

the [Plan] is not an insurer." *Westbrook v. Robbins*, 416 Pa.Super. 543, 611 A.2d 749, 752 (1992). Further, "there is no insurer-insured relationship between [an injured person] and the [Plan]." *Id.* See also *Hodges v. Rodriguez*, 435 Pa.Super. 360, 645 A.2d 1340, 1348 (1994) ("actions against the Assigned Claims Plan do not involve an insurer-insured relationship"). Thus, we reject appellant's premise that he stands in an insured-insurer relationship to the Plan and that he is, therefore, entitled to benefits under the plan because from his viewpoint as an "insured," the collision was an unexpected and undesirable event.

Appellant also contends that he is entitled to benefits under the Plan as a matter of public policy and statutory interpretation based on legislative intent. He argues, *inter alia*, that because the legislature is presumed to

favor the public interest as opposed to any private interest[,] 1 Pa.C.S.A. § 1922[,][u]nder the statutory scheme of 75. Pa.C.S.A. § 1751 *et seq.*, the legislature clearly intended the Courts to look from the Claimant's perspective (the public victims) when ascertaining whether the claimant's injuries came from an intentional act or an accident.

Appellant's Brief at 13.

◼ We disagree and parenthetically observe that, in the context of contracts for insurance, "it is against the public policy of this Commonwealth to provide insurance coverage for intentional acts." *State Farm Mut. Auto. Ins. Co. v. Martin*, 442 Pa.Super. 442, 660 A.2d 66, 68 (1995) (quoting *Nationwide Mut. Ins. Co. v. Hassinger*, 325 Pa.Super. 484, 473 A.2d 171, 173 (1984)). Thus, it is clear that if Lionel Wright, the wrongdoer in this case, had in force at the pertinent time, a policy of insurance for injuries caused by "accident," appellant would have been unable to recover under the policy as Wright's acts were intentional and would have been

---

**3.** Appellant refers us to the *American Heritage Dictionary* (Second College Edition) for the following definition of the word accident: "1. An unexpected and undesirable event." In counterpoint, we cite the definition contained in *Web-* *ster's College Dictionary:* "1. An undesirable or unfortunate happening that occurs *unintentionally* and usu. results in injury, damage or loss." (Emphasis added).

excluded from the policy.[4] In *Martin*, 442 Pa.Super. 442, 660 A.2d 66, Frederick Martin, insured under an automobile policy issued by State Farm, intentionally struck his estranged wife, April Martin, with a pick-up truck. The issue on appeal was whether State Farm was liable to indemnify its insured, Frederick Martin, for damages caused by his intentional acts under a policy providing liability coverage for bodily injury and property damage "caused by accident." We explicitly reiterated the well-settled principle that in the context of insurance agreements, "[a] willful and malicious assault, being an intentional tort, is not an accident." *Id.* 660 A.2d at 67 (citing *Gene's Restaurant Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246 (1988)).

■ However, the Plan is not an insurer and the statute which sets forth a claimant's eligibility requirements is not a contract for insurance. *Hodges*, 645 A.2d at 1347. For that reason the rule of *Martin*, while instructive, is not controlling. Moreover, the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701, *et seq.*, pursuant to which the Plan and its eligibility requirements are legislatively created, does not define "accident." Thus, appellant argues that even an intentionally committed tort can properly be considered an "accident" to its unwitting victim and that the legislature intended for a person so injured to be eligible for benefits under the Plan. Appellant's argument that an event which produces injury can properly be characterized as either accidental or purposeful, depending upon whether the event is seen from the viewpoint of the victim or the viewpoint of the intentional tortfeasor, represents a color-

able claim that the statute is ambiguous.[5] Accordingly, we will examine the statute to determine the legislature's intention underlying the requirement that an eligible claimant be "injured as the result of a motor vehicle accident." 75 Pa.C.S.A. § 1752(a)(2). Specifically, we inquire whether the word "accident" contemplates intentionally committed acts.

[O]ur rules of statutory construction make clear that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). 1 Pa.C.S. § 1921(a). Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words. Where however, the statute is unclear or susceptible of different interpretations, the courts must look to the necessity of the act, the object to be attained, the circumstances under which it was enacted and any legislative or administrative interpretations thereof. *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989). In ascertaining the legislative intent of a particular statute it is presumed, *inter alia*, that the legislature did not intend a result that is absurd or unreasonable nor one that would be violative of the United States Constitution or the Constitution of the Commonwealth. It is also presumed that the legislature intends to favor the public interest as opposed to any private interest.

*Penn. Assigned Claims Plan v. English*, 541 Pa. at 430–31, 664 A.2d at 87 (additional citation omitted). We further note that the provisions of a statute are to be interpreted,

---

4. The parties are, of course, bound by their agreed upon stipulation. The fact that Wright acted intentionally was not in dispute below and is not disputed in this appeal.

5. In the context of liability insurance policies, other jurisdictions are split regarding whether an intentional act constitutes an accident for which coverage applies. The courts of Louisiana, Michigan, Mississippi, Nebraska, New Hampshire, New Jersey, North Dakota, Washington, West Virginia and Wisconsin have held that events which produce injury must be viewed from the standpoint of the injured victim, and have thus concluded that such events are accidents for

which coverage exists, despite being intentionally caused. The following jurisdictions have held that the determination must be made from the standpoint of the assailant rather than the injured party and have thus found no accident and, accordingly, no coverage: Maryland, Massachusetts, New York, North Carolina and Ohio. *See generally* 72 ALR 3d 1090, *et seq.* As heretofore discussed, our courts have held that the injury producing event must be viewed from the standpoint of the "insured," *Mohn, supra; Martin, supra.* In the case *sub judice*, neither party was insured or stood in an insured-insurer relationship with the Plan.

whenever possible, in a manner that gives effect to the entire statute. *Hodges*, 645 A.2d at 1345.

■ Turning to the substance of appellant's issue, we initially note a claimant is explicitly ineligible for the limited statutory benefits provided by the Plan if the claimant intentionally injures himself or another.

> **(b) Grounds for ineligibility.**-A person otherwise qualifying as an eligible claimant under subsection (a) shall nevertheless be ineligible to recover benefits from the Assigned Claims Plan if that person contributed to his own injury in any of the following ways:
>
> (1) While intentionally injuring himself or another or attempting to intentionally injure himself or another.

75 Pa.C.S.A. § 1752 (b)(1).[6]

Appellant argues that because the explicit language above applies only to disqualify a claim for benefits when the claimant has intentionally injured himself, the legislature, by failing to explicitly exclude claims for benefits when the claimant has been intentionally injured by another, implicitly intended for persons injured by another's intentional acts involving a motor vehicle to receive benefits under the Plan. We find appellant's contention unavailing as it requires a severely strained interpretation of the statute. Moreover, such an interpretation would be inconsistent with Section 1718 of the MVFRL which contains essentially the same exclusionary language with respect to insurance contracts and from under which no analogous implied benefit exists. Indeed, it is well settled that, in the context of contracts for insurance, intentional torts are not covered by policies agreeing to indemnify an insured against damages caused by accident. *Martin*, 660 A.2d at 67. We therefore cannot find an implicit entitlement to benefits under the statutory language of the Plan.

Moreover, although the MVFRL contains no Legislative Finding Section, it is well settled that one of the principles behind the enactment of the MVFRL was to bring down the high cost of automobile insurance premiums. The Assigned Claims Plan is comprised of "all insurance companies doing business in this Commonwealth." *Westbrook*, 611 A.2d at 752. The Plan "is not an insurance company but an administrative organization that distributes the financial responsibility for certain limited statutory benefits among Pennsylvania's automobile insurers, as a cost of doing business in Pennsylvania, and through the insurers' policy holders." *Hodges*, 645 A.2d at 1347. Moreover, Section 66.31 of Title 31 Insurance provides "(a) Rates shall be considered to include amounts required to fund the Assigned Claims Plan." 31 Pa.Code 66.31(a). Thus, it is clear the Plan is funded through the premiums paid by automobile insurance purchasers throughout the Commonwealth. Given that one of the objects to be obtained by enactment of the MVFRL is to bring down the high cost of automobile insurance premiums, a broad interpretation of the statutory eligibility requirements which would entitle a claimant to benefits for injuries received as the result of intentional torts, would run counter to the exclusivity consistent with the legislative intent.

Finally, while it is true that the Plan does not create an insured-insurer relationship between the claimant and the Plan, *Hagans v. Constitution State Service Co.*, 455 Pa.Super. 231, 687 A.2d 1145 (1997), the symmetry between a claim under the Plan and the assertion of an insurance claim is inescapable. Accepting, then, the doctrine in Pennsylvania that it is against public policy to provide insurance coverage for intentional acts, *Nationwide Mut. Ins. Co. v. Hassinger*, 325 Pa.Super. 484, 473 A.2d 171 (1984); *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966), we must logically conclude that it

---

**6.** We note that this language bears great similarity to Section 1718 of the MVFRL which excludes benefits under contracts of insurance for injuries resulting from the intentional conduct of an insured:

> **§ 1718. Exclusion from benefits.**
> (a) **General rule.**-An insurer shall exclude from benefits any insured ... when the conduct of

the insured contributed to the injury sustained by the insured [in] any of the following ways:

> (1) While intentionally injuring himself or another or attempting to intentionally injure himself or another.

75 Pa.C.S.A. § 1718(a)(1).

is not the purpose of the Plan to provide benefits for acts of intentional or criminal wrongdoing simply because the chosen instrumentality is a motor vehicle.

For the foregoing reasons, we reject appellant's claim that the legislature intended persons injured by the intentional acts of another to be eligible claimants under the Plan. The statute requires that an eligible claimant be "injured as the result of a motor vehicle accident." 75 Pa.C.S.A. § 1752(a)(2). We conclude that the word "accident," contrary to appellant's argument, does not include the intentional acts of a tortfeasor involving a motor vehicle when both the injured person and the tortfeasor are uninsured. The resultant injuries to a pedestrian who has been intentionally injured by a motor vehicle cannot be construed, under the statute, as having been "accidentally" caused or sustained. Neither can the intentional act from which those injuries resulted be deemed an "accident."

Finding no merit to the issue raised, we affirm the order and judgment which denied appellant's post-trial motions.

Judgment affirmed.