**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN, Defendant.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.

Decided May 24, 1999.

---

7. Ordinance, Section 2.1 at 5; R.R. at 13a.

Jason W. Manne, Pittsburgh, for plaintiff.

A. Richard Feldman, Philadelphia, for defendant.

Before DOYLE, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

This matter arises as a declaratory judgment action in our original jurisdiction and involves cross-motions for summary judgment filed by the Commonwealth of Pennsylvania, Department of Public Welfare (DPW) and the Pennsylvania Financial Responsibility Assigned Claims Plan (the Plan) with respect to the issue of liability for certain medical benefits. For the reasons that follow, we grant the Plan's motion for summary judgment and deny the same filed on behalf of DPW.

The underlying facts of the instant case are not in dispute. The Plan is an entity created pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7.[1] Essentially, the Plan provides limited medical benefits, up to a maximum of $5,000.00, to individuals who are injured as a result of a motor vehicle accident and are not otherwise entitled to recover any type of health, accident or insurance benefits. *See* 75 Pa.C.S. §§ 1752, 1753; *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84 (1995). The Plan is funded and administered by insurers who underwrite automobile insurance in the Commonwealth.[2] *See* 75 Pa. C.S. § 1751.

Throughout the years, the Plan reimbursed DPW for medical benefits paid to individuals through the medical assistance program, a program administered by DPW. However, in 1996, the Plan began denying claims for reimbursement of medical assistance benefits submitted by DPW, as it concluded that it was not liable for such reimbursement. Following unsuccessful attempts to achieve a negotiated resolution, DPW commenced the instant action in February of 1998.

As the underlying facts with respect to the issue of liability were not in dispute, DPW filed a motion for partial summary judgment.[3] The Plan then filed its own motion for summary judgment based upon the same facts. These motions are presently before this Court. In support of its motion, DPW contends that Section 1409 of the Fraud and Abuse Control Act, Act of June 13, 1967, P.L. 31, *added by* Act of July 10, 1980, P.L. 493, *as amended,* 62 P.S. § 1409, imposes liability on the Plan. In addition, DPW contends that a finding of no liability on the part of the Plan would be contrary to federal law.

In opposition to DPW's motion and in support of its own motion, the Plan avers that Section 1409 of the Fraud and Abuse Control Act imposes no liability upon it, as it is not an insurer. The Plan also avers that Section 1755(b) of the MVFRL, 75 Pa.C.S. § 1755(b), makes its liability secondary to that of DPW. Finally, the Plan avers that DPW's reliance on federal law is misplaced, as no provision of federal law imposes liability on the part of the Plan to reimburse DPW.

We begin by analyzing Section 1409 of the Fraud and Abuse Control Act. This Section of the Act provides, in pertinent part, as follows:

> (a)(1) No person having private health care coverage shall be entitled to receive the same health care furnished or paid for by a publicly funded health care program ... For the purposes of this section, "privately funded health care" means medical care coverage contained in accident and health insurance policies or subscriber contracts issued by health plan corporations and nonprofit health service plans ... and also any medical care benefits provided by self insurance plan including self insurance trust, as outlined in Pennsylvania insurance laws and related statutes.

---

1. Specifically, Sections 1751 through 1757 of the MVFRL, 75 Pa.C.S. §§ 1751–1757, address the creation, organization and implementation of the Plan.

2. However, the costs of the Plan are ultimately borne by all residents of the Commonwealth who carry automobile insurance, as the Plan's members are authorized by law to pass on their expenses related to the Plan to their policyholders. *See* Section 66.31(a) of Title 31 of the Pennsylvania Code, 31 Pa.Code § 66.31(a); *Blackman v. Wright,* 716 A.2d 648 (Pa.Super.1998).

3. The instant action was commenced by DPW with the filing of a complaint for declaratory judgment. The Plan then filed an answer with new matter and a counterclaim, requesting a declaratory judgment in its favor. The Plan has since advised DPW of its intention to amend its counterclaim to assert a claim for declaratory relief with respect to DPW's claim computation methodology. DPW has agreed to consent to such an amendment when filed. Hence, DPW only sought partial summary judgment with respect to the issue of liability.

(2) If such a person receives health care furnished or paid for by a publicly funded health care program, the insurer of his private health care coverage shall reimburse the publicly funded health care program, the cost incurred in rendering such care to the extent of the benefits provided under the terms of the policy for the services rendered.

. . .

■ (b)(1) When benefits are provided or will be provided to a beneficiary under this section because of an injury for which another person is liable, or for which an insurer is liable in accordance with the provisions of any policy of insurance . . . the department shall have the right to recover from such person or insurer the reasonable value of benefits so provided.

Sections 1409(a)(1)–(2) and (b)(1) of the Fraud and Abuse Control Act, 62 P.S. § 1409(a)(1)–(2), (b)(1).

There is no dispute that DPW pays medical benefits to individuals through its medical assistance program, a publicly funded health care program. Nor is there a dispute that a private insurer of these individuals would be liable to DPW for reimbursement of medical expenses paid by DPW to the extent of the benefits provided under the terms of the private insurance policy.

However, our Superior Court has consistently held that the Plan is not an insurer. *See Blackman v. Wright,* 716 A.2d 648 (Pa.Super.1998); *Westbrook v. Robbins,* 416 Pa.Super. 543, 611 A.2d 749 (1992). More specifically, our Superior Court has held that the Plan "is not an insurance company but an administrative organization that distributes the financial responsibility for certain limited statutory benefits among Pennsylvania's automobile insurers." *Hodges v. Rodriguez,* 435 Pa.Super. 360, 645 A.2d 1340, 1347 (1994). As the Plan is not an insurer, we cannot say that

Section 1409 of the Fraud and Abuse Control Act imposes liability upon the Plan for the reimbursement of medical benefits paid by DPW.

■ Next, we address Section 1755(b) of the MVFRL. This Section of the MVFRL is a coordination of benefits provision and provides as follows:

(b) Accident and health benefits.—All benefits an eligible claimant receives or is entitled to receive as a result of injury from any available source of accident and health benefits shall be subtracted from those benefits available in section 1753.[4]

75 Pa.C.S. § 1755(b). The language of this Section is broad and includes "accident and health benefits" received from "any available source." With respect to this issue, the dispute arises as to whether the term "accident and health benefits" includes those benefits provided by DPW. We conclude that it does.

■ The term "accident and health benefits" is not defined in the MVFRL. Where words in a statute are undefined by the statute, we are required to construe the words according to their plain meaning and common usage. *See Beardsley v. State Employes' Retirement Board,* 691 A.2d 1016 (Pa.Cmwlth.1997). Black's Law Dictionary 158 (6 th ed.1990) defines "benefit" as "[f]inancial assistance received in time of sickness, disability, unemployment, etc. either from insurance or public programs such as social security."

Additionally, in *Department of Public Welfare v. Maryland Casualty Co.,* 164 Pa.Cmwlth. 301, 643 A.2d 139, 140–141 (1994), this Court, citing to a prior version of the Fraud and Abuse Control Act, used the term "any health insurance benefits" to include both private **and** public health benefits. Moreover, we note that our Superior Court has held that the Plan's benefits are secondary to other forms of health

4. Section 1753 of the MVFRL, 75 Pa.C.S. § 1753, provides that "[a]n eligible claimant

may recover medical benefits . . . up to a maximum of $5,000."

coverage. *See Westbrook.* Thus, we conclude that the Plan's liability for medical benefits is secondary to the liability of DPW for such benefits.

Finally, we turn our attention to federal law. Medicaid is established under Title XIX of the Social Security Act (Act), 42 U.S.C. §§ 1396–1396v (1998), to provide medical care for needy families, as well as aged, blind and disabled individuals. The federal government shares the costs for such care with states that elect to participate in the program. *See* Section 1396a of the Act, 42 U.S.C. § 1396a (1998). In return, participating states are obliged to comply with requirements imposed by the Act and by the Secretary of the United States Department of Health and Human Services (HHS). *Id.; see also Atkins v. Rivera,* 477 U.S. 154, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986).

■ In Pennsylvania, the Medicaid program is called the medical assistance program and, as indicated previously, is administered by DPW. DPW first contends that a finding of no liability on the part of the Plan would violate Section 1396b(*o*) of the Act, 42 U.S.C. § 1396b(*o*) (1998). This Section of the Act provides as follows:

> (*o*) Restrictions on authorized payments to States. Notwithstanding the preceding provisions of this section, no payment shall be made to a State ... for expenditures for medical assistance provided for an individual under its State plan ... to the extent that a private insurer (as defined by the Secretary [of the Department of HHS] by regulation ...) would have been obligated to provide such assistance but for a provision of its insurance contract which has the effect of limiting or excluding such obligation because the individual is eligible for or is provided medical assistance under the [State] plan.

The Secretary of the Department of HHS has defined the term "private insurer" at Section 433.136 of Title 42 of the Code of Federal Regulations, 42 C.F.R. § 433.136 (1980). This Section of the regulation defines "private insurer" as follows:

> (1) Any commercial insurance company offering health or casualty insurance to individuals or groups ...;
> (2) Any profit or nonprofit prepaid plan offering either medical services or full or partial payment for services included in the State plan; and
> (3) Any organization administering health or casualty insurance plans for professional associations, unions, fraternal groups, employer-employee benefit plans, and any similar organization offering these payments or services, including self-insured and self-funded plans.

DPW, citing to the case of *Rubin v. Sullivan,* 928 F.2d 898 (9th Cir.1991) for support, contends that the Plan fits within the latter part of subsection (3) of the regulation, i.e., as "any similar organization offering these payments or services." We do not agree.

Subsection (3) of this regulation applies to organizations administering health or casualty insurance plans to such entities as professional associations, unions and employer-employee benefit plans. It is undisputed that the Plan is not an administrator of health insurance plans for such types of groups. Instead, the Plan simply provides medical benefits to individuals who are injured as a result of a motor vehicle accident and are not otherwise entitled to recover any type of health, accident or insurance benefits. *See* 75 Pa.C.S. §§ 1752, 1753.

The latter part of subsection (3) merely includes other organizations, similar to these insurance administrators, that offer "these payments or services," i.e., insurance payments and services. This subsection goes on to provide two examples of such other "similar organizations," a "self-insured" plan and a "self-funded" plan. DPW does not contend that the Plan fits within either of these two examples. In addition, we previously indicated that the Plan does not operate as an insurer/insur-

ance company. *See Blackman; West-brook; Hodges.* Thus, we cannot say that the Plan fits within the definition of "private insurer," as that term is defined in subsection (3) of the regulation.

Moreover, DPW's reliance on the *Rubin* case is misplaced. The facts of *Rubin* are distinguishable from the instant case. In *Rubin,* the state of Hawaii passed a statute requiring private automobile insurance companies to issue private automobile policies to indigent drivers on medical assistance. The insurance contracts that these private insurers issued to the recipients of medical assistance all had a clause making the policy's medical expense coverage inapplicable to such recipients.

Hence, the Hawaii statute was clearly in contradiction to Section 1396b(*o*) of the Act and the Ninth Circuit upheld the determination of the United States Health Care Financing Administration (HCFA)[5] that Hawaii should not receive matching federal Medicaid funds for the medical bills of the recipients of medical assistance whose automobile insurance contracts precluded the receipt of the same benefits from private insurers.

In the instant case, we determined that the Plan does not fit within the definition of "insurer" or "private insurer" under either state or federal law. In addition, it is undisputed that the Plan does not issue insurance contracts to individuals. Further, the insurance policies in *Rubin* contained a clause that specifically singled out recipients of medical assistance. Section 1755(b) of the MVFRL, the statute at issue in the instant case, does not single out such recipients, but rather, makes the Plan's liability for medical benefits secondary to any other "available source of accident and health benefits."

■ Finally, DPW contends that a finding of no liability on the part of the Plan

would violate Section 1396a(a)(25)(G) of the Act, 42 U.S.C. § 1396a(a)(25)(G).

This Section of the Act essentially requires states to prohibit "any health insurer," including "a service benefit plan," from taking into consideration an individual's eligibility for, or receipt of, medical assistance during the enrollment of an individual or during the making of any payment of benefits to that individual. DPW contends that the Plan fits within the common and usual definition of "service benefit plan," but presents no further discussion with respect to this contention.

Nevertheless, DPW's contention in this regard is without merit. The term "service benefit plan" has a well-accepted meaning in the world of health care benefits. A "service benefit plan" is a health benefit plan of the Blue Cross/Blue Shield variety, whereby Blue Cross/Blue Shield or a similar entity contracts with various hospitals and medical providers to provide services to its members. We fail to see how the Plan fits within such a definition. Thus, we cannot say that a finding of no liability on the part of the Plan would be contrary to federal law.

Accordingly, we deny the motion for summary judgment filed on behalf of DPW and grant the same filed on behalf of the Plan.

### ORDER

AND NOW, this 24th day of May, 1999, the motion for summary judgment filed on behalf of the Department of Public Welfare is denied. The motion for summary judgment filed on behalf of the Pennsylvania Financial Responsibility Assigned Claims Plan is granted.

---

**5.** The HCFA is a federal agency responsible for ensuring a state's compliance with the Act.