Shawn **KIRKPATRICK** and Christopher Ryan, Plaintiffs,

v.

**AIU INSURANCE COMPANY,** Defendant.

No. CIV.A. 01–3936.

United States District Court, E.D. Pennsylvania.

April 29, 2002.

**851**

Kathleen Carmen, Murphy & Carmen, Media, PA, for plaintiffs.

Edward J. Tuite, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court are the Motions for Summary Judgment of Plaintiffs Shawn Kirkpatrick ("Kirkpatrick") and Christopher Ryan ("Ryan") (collectively referred to as "Plaintiffs") and Defendant AIU Insurance Company ("AIU" or "Defendant"). This is a declaratory judgment action regarding uninsured motorists coverage for injuries sustained in a carjacking. For the reasons that follow, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

### BACKGROUND

This case arises from a carjacking that occurred on June 29, 1999, at a 7–Eleven in Yeadon, Pennsylvania. Prior to the carjacking, Ryan, driving his own car, picked up Kirkpatrick to go get something to eat. Plaintiffs then stopped at the 7–Eleven to allow Kirkpatrick to purchase a pack of cigarettes and to allow Ryan to make a telephone call. Kirkpatrick entered the 7–Eleven, made his purchase, and then returned to the car. Ryan then went to make a phone call at a payphone. While Ryan was on the phone, a man came up to the car and placed what appeared to be a gun to Kirkpatrick's back and ordered him out of the car. An unidentified male and female entered the car as Kirkpatrick exited the car. When Ryan noticed what was happening, he returned to the driver's side of the car and opened the door in an attempt to either make the people in the car get out or to get the keys out of the car. Also at this time, Kirkpatrick noticed that the gun that was placed to his back earlier did not look real.

As Ryan reached into the car to get his keys, the assailants put the car in reverse. Kirkpatrick ran to the back of the vehicle to attempt to stop it, but Kirkpatrick got of the way when the car started moving. The carjackers started to accelerate in reverse and, in doing so, knocked Ryan over and wedged him between the car and the ground. Ryan was then dragged through the 7–Eleven parking lot and into the street. When the carjackers started to move forward with the car, Ryan became unwedged. Kirkpatrick then reached into the car to try to stop the carjackers by turning off the ignition. Kirkpatrick may have also been punching one of the carjackers in the face. At this point the girl carjacker bit Kirkpatrick and he got his arm caught inside the car behind the door and seat. The car then accelerated forward with Kirkpatrick's arm stuck in the window. Kirkpatrick was able to run alongside the car for a short distance, but when the car accelerated to a higher rate of speed, he lost his footing and was being dragged by the moving car.[1] In an attempt to get Kirkpatrick off the car, the carjackers drove into a parked car so that Kirkpatrick was pinned between the moving car and the parked car. At this point, Kirkpatrick was freed from the car.

Both Ryan and Kirkpatrick suffered physical injuries including lacerations, abrasions, cuts, bruises, and ankle and knee injuries. Ryan ultimately had surgery to correct his ankle injury and Kirkpatrick has surgery on both of his knees.

Ryan's car was covered under an insurance policy that provided uninsured motorists benefits. After exhausting their first party medical benefits,[2] the Plaintiffs sought to obtain additional benefits under the uninsured motorists portion of the policy. AIU disputes that there is coverage under the policy. Both parties have filed summary judgment motions and have attached the pertinent deposition testimony to their motions.

## DISCUSSION

### A. Standard of Review

#### 1. Standard for Interpreting Insurance Contracts

■ The Pennsylvania Supreme Court[3] has established the following guidelines for interpreting insurance contracts:

> The task of interpreting [an insurance] contract is generally performed by a court rather than a jury. The goal of the task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to the language.

---

1. One of the police officers who came upon the scene as the carjacking incident was reaching its conclusion, stated that he saw two men chasing the car. See Norman Dep. Tr. at pg. 7, lines 14–16. Defendant argues that this is evidence that Plaintiffs chased the carjackers down and provoked the attack. However, this officer admits he did not see the entire incident and could not tell exactly what happened. Id. at pgs. 8–11 and 15–17. Further, this officer's testimony does not negate Plaintiff's version of the facts. In fact, the only fact it negates is that Ryan stayed on the ground after being dragged by the vehicle. A fact which is not material.

2. Defendant paid Ryan's first party medical benefits, and Kirkpatrick's first party medical benefits were paid by his own insurance company.

3. Both sides agree that Pennsylvania law governs this action.

*Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983).

## 2. *Summary Judgment Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. *Coverage for Plaintiffs' Injuries Under the AIU Policy*

### 1. *The Policy*

The Policy at issue provides for uninsured motorists coverage as follows: "we will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury (1) caused by accident and (2) sustained by an insured." *See* Policy, Part C, at ¶ A. Insured is defined thusly: " '[i]nsured' as used in this part means: (1) you or any family member (a) while occupying or (b) as a pedestrian struck by a motor vehicle designed for use mainly on the public roads ... (2) or any other person while occupying your covered auto." *Id.* at ¶ B.

Bodily injury "means accidental bodily harm to a person and that person's resulting illness, disease or death." *See* Policy Endorsement Changing First Party Benefits Coverage at ¶ B(1). The Uninsured Motorists Coverage Endorsement further states that bodily injury must be caused by an accident arising out of the maintenance or use of the motor vehicle. *See* Uninsured Motorists Coverage Endorsement at ¶ A(1). The policy does not define accident and the uninsured motorists coverage portion of the policy does not include an exclusionary clause excluding and/or defining intentional acts.

### 2. *Coverage for Plaintiffs' Injuries*

AIU argues that Plaintiffs' injuries are not covered under the terms of the policy because their injuries were not caused by an accident but rather were caused by their own intentional conduct. AIU argues that if Plaintiffs had not tried to stop the carjackers from stealing the car they would not have been injured, and thus it was their own intentional act of trying to stop the carjackers that caused their injuries.

Under the terms of the policy, there is no question that the Plaintiffs are considered "insureds." Further, there is no question that the Plaintiffs' injuries resulted from "use of the motor vehicle." Thus, the only question for the Court is whether

the injuries sustained by Plaintiffs were ·as a result of an "accident."

As stated above, the policy does not define accident or intentional acts. However, Pennsylvania courts have defined both of those terms in interpreting other insurance contracts. For example, in the·context of the duty to defend under a homeowner's policy, the Pennsylvania Supreme Court has determined that "[w]hen it is alleged that the conduct of the insured causing harm was intentional, there has been no accident or 'occurrence.'" *State Farm Fire & Casualty Co. v. Tolmie,* No. CIV.A. 97–7878, 1998 WL 737981, *·3 (E.D.Pa. Oct. 22, 1998) (quoting *Gene's Restaurant, Inc. v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246, 246–47 (1988)). Pennsylvania courts have further determined that "'[a]n insured intends injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.'" *United States Fire Insurance Co. v. Rothenberg,* No. CIV.A. 98–2275, 1998 WL 778354, *8 (E.D.Pa. Sept. 25, 1998) (quoting *Wiley v. State Farm Fire & Casualty Co.,* 995 F.2d 457, 460 (3d Cir.1993) (quoting *United Services Automobile Association .v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 989 (1986))). To determine whether an insured intended the harm, courts apply a subjective standard. *Wiley,* 995 F.2d at 460 (Pennsylvania standard for specific intent looks to insured's actual subjective intent). Thus "it is not sufficient that the insured intended his *actions;* rather, for the resulting injury to. be excluded from coverage, the insured must have specifically intended *to cause harm.*" *Id.* (emphasis in original) (citing *Elitzky,* 517 A.2d at 987 and *Eisenman v. Hornberger,* 438 Pa. 46, 264 A.2d 673, 674–75 (1970)). Accordingly, in determining whether conduct is intentional, the doctrine of foreseeability is inapplicable. *Elitzky,* 517 A.2d at 988 (citing

*Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346, 349 (1974)).

Further, Pennsylvania courts distinguish between conduct that is "intentional" and conduct that is "reckless." In *Elitzky,* the Court, quoting the Restatement (Second) of Torts, held that "'[a]s the probability that the consequences will follow [the insured's acts] decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.'" *Elitzky,* 517 A.2d at 989 (quoting Restatement (Second) of Torts § 8A cmt b). The Pennsylvania courts have adopted the Restatement's definition of recklessness which follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable ·risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id.* at 989–990 (quoting Restatement (Second) of Torts § 500).

Courts applying Pennsylvania law have held that conduct which is reckless, as defined above, does not equate to intentional conduct, but, rather, constitutes an accident·or occurrence. *See, e.g., Rothenberg,* 1998 WL 778354 at *9 (if harm is inflicted recklessly rather than intentionally there is coverage); *Duff Supply Co. v. Crum & Forster Insurance Co.,* No. CIV.A. 96–8481, 1997 WL 255483, *13 (E.D.Pa. May 8, 1997) ("reckless conduct constitutes an 'accident' and 'accidents' are 'occurrences' under the defendants' policy").

■ Defendant claims that Plaintiffs' conduct constitutes intentional conduct and should not be covered under the policy as an accident because Plaintiffs were not injured until they intentionally attempted to stop the carjackers. Defendant claims that the Plaintiffs' conduct was "intentional and reckless." Def.'s Mot. at ¶ 25.

Upon questioning about the incident, Christopher Ryan responded as follows:

Q: During the period of time when you opened the car door and attempted—did you attempt to get into the vehicle?

A: I don't really know what I attempted. There were people in my car. I pretty much objected to them being there. Whatever I tried to do—maybe get the keys. You know, you figure if somebody is in your car and you open the door they are going to get out.

Ryan Dep. Tr. pg. 13, lines 15–23.

Q: Did you at that point when you figured that they were going to try to steal your car, did you consider backing off and letting them steal your car?

A: I don't think so. It wasn't—there was no thought in it. It was all instinct. I just acted on adrenalin. It was such a short span of time. There was no consideration of anything.

Q: Did you intend to stop them from stealing your car by your actions?

A: I didn't intend on anything.

Q: Why did you open the car door?

A: Because it is my car.

Q: I understand. What did you attempt to accomplish by opening the car door?

A: Tell them to get out.

. . .

Q: Did you intend for them not to steal your car by opening the car door and ordering them to get out?

A: I didn't intend anything. I just didn't want anybody else in my car.

Q: Did you intend for them to get out of your car by your actions?

A: I guess I thought they would have. I don't know.

Ryan Dep. Tr. pgs. 22–24.

Q: I understand you testified that you acted on adrenalin. I'm trying to ascertain what you expected to occur as a result of opening the car door. Were you trying to get them out of your car so they would not steal your car?

A: Sure.

Ryan Dep. Tr. pg. 25, lines 1–7.

Shawn Kirkpatrick testified about his intent as follows:

Q: And what did you do next?

A: Then I was reaching in to try to stop them. I was trying to turn the car off, get them to stop. That's—I think it was the girl bit me on my arm, and as I was reaching in my arm got caught inside down behind the door and the seat. That's when they took off with my arm stuck inside the window. The window was down and my arm was caught inside the car.

Q: Did you consider letting them drive away without putting your arms into the car?

A: I wasn't really thinking at all. It just happened. I wasn't thinking. It was instinct. I was trying to help him and get what was his back.

Q: You were not trying to help him physically, you were trying to save the car?

A: Like, there is only so much I—I wasn't really thinking. I saw him getting hurt. Something was going on against him. Something just happened to me. You know. I was just doing whatever. I was just running on high instinct there. It was all adrenalin, so.

. . .

Q: When you reached in did you reach for the key area or the steering wheel area?

A: I was reaching for whatever I could. You know. I didn't even make it that far until, you know, whatever else happened.

Q: Did you ever punch or hit any of the people in the car?

A: I could have hit them in the process of trying to stop this.

Kirkpatrick Dep. Tr. pgs. 33–35

The Court finds that this testimony does not evidence Plaintiffs' intent to cause the harm they suffered. *See Wiley*, 995 F.2d at 460 (not enough that insured intended his actions, must have also intended to cause harm). Both Ryan and Kirkpatrick testified that they were acting on adrenaline and neither of them formed an intent to cause harm. *See* Ryan Dep. Tr. at pgs. 22–24; Kirkpatrick Dep. Tr. at pgs. 33–35.

The cases cited by the Defendant are distinguishable from the facts of this case. For example, Defendants cite *Blackman v. Wright*, 716 A.2d 648 (Pa.Super.1998) as supportive of their position. In *Blackman*,

an uninsured driver intentionally drove a car into a pedestrian. The Court did not consider this an "accident" under the terms of the uninsured motorists policy and held that there was no coverage because the driver intended to hit the pedestrian. *Blackman*, 716 A.2d at 653. This is not a case like *Blackman*. In this case, neither Plaintiff intended to be dragged from or run over by the carjackers.[4]

Further, in *Roque v. Nationwide Mutual Insurance Co.*, another case cited by the Defendant, the Court held that there was no coverage for an insured who was shot and killed by the police while burglarizing a home. 502 Pa. 615, 467 A.2d 1128, 1129 (1983). The Court found that there was no coverage because the insured provoked the police officer into shooting him. The insured repeatedly told the police officers that he had a gun and repeatedly threatened to shoot the police officers. *Id.* The insured then pointed his gun at a police officer and cocked it. *Id.* The officer only shot the insured after these repeated threats and after the gun was pointed at him and cocked. The Court found that "the insured's conduct provoked the shooting and that the insured's death was thus not accidental." *Id.*

The acts of the Plaintiffs in this case do not rise to this level. The Plaintiffs both testified that they thought their acts would make the carjackers get out of the car.[5] While the conduct may be considered reckless, such recklessness does not preclude coverage. *See Rothenberg*, 1998 WL

---

4. For purposes of this Motion, Defendant is not arguing that the carjackers' intentional conduct precludes coverage. Rather, Defendant is arguing that Plaintiffs' conduct in trying to stop the carjackers was the intentional act that precludes coverage. Previously, Defendant argued there was no coverage because of the intentional acts of the carjackers but has since changed its position.

5. Defendant makes much of the fact that Kirkpatrick may have punched the carjacker in the course of trying to stop the carjacking. However, even if Kirkpatrick was punching the carjacker in the course of attempting to stop the carjacking, the Court finds that the intent was the same—to stop the carjacking. While this conduct may have been reckless, given the facts of this case, it does not rise to the level of intent that would preclude coverage.

778354 at * 9 (if harm inflicted recklessly rather than intentionally there is coverage); *Duff Supply,* 1997 WL 255483 at * 13 ("reckless conduct constitutes an 'accident' and 'accidents' are 'occurrences' under the defendants' policy").

Thus, the Court finds that there is coverage under the uninsured motorists provision of the policy at issue.[6]

### CONCLUSION

An appropriate Order follows.

---

6. Given our ruling, there is no need to address the Equitable Estoppel argument raised by the Plaintiffs.