## PULLMAN POWER PRODUCTS OF CANADA LIMITED

### v.

## BASIC ENGINEERS, INC., and Stone & Webster Canada, Limited.

### Appeal of STONE & WEBSTER CANADA LIMITED.

Superior Court of Pennsylvania.

Argued March 25, 1998.
Filed June 30, 1998.

Edward B. Gentilcore, Pittsburgh, for appellant.

Joseph A. Katarincic, Pittsburgh, for Pullman Power Products, appellee.

Before POPOVICH, ORIE MELVIN and BROSKY, JJ.

**BROSKY, Judge.**

Stone & Webster Canada, Limited ("S & W") appeals from the July 15, 1997 trial court order certifying this case for immediate appeal to this Court pursuant to Pa.R.A.P. 341(c); said order stated, "It is expressly determined that an immediate appeal of this Order would facilitate resolution of the entire case." Trial Court Order, 7/15/97. The July 15, 1997 order amended the trial court's June 26, 1997 order, which sustained the preliminary objections of S & W and dismissed the lawsuit filed against S & W by plaintiff-appellee Pullman Power Products of Canada Limited ("Pullman").

S & W is a Canadian Corporation (Ontario) whose head office and principal place of business is located in Toronto, Ontario, Canada and is engaged in, *inter alia,* the business on engineering and designing piping systems, including pipe hangers and pipe supplies for power plants. S & W does not maintain any offices or facilities in Pennsylvania.

Pullman is a Canadian corporation (Province of Ontario, Canada) and is engaged in the business of mechanical construction; according to its complaint, Pullman's "principal offices" are in Pittsburgh, PA.

Defendant Basic Engineers, Inc. ("Basic") is a Pennsylvania corporation with its principal place of business in Johnstown, PA and is engaged in the business of engineering, designing and fabricating pipe hangers and pipe supports for power plants. Basic is not a party to this appeal.

On or about April 17, 1990 Pullman sent, from its Pittsburgh office, a purchase order to S & W, requiring S & W to perform design and engineering services for the piping and pipe support systems for a power plant;[1] the duties were to be performed in Ontario and New Brunswick, Canada. Pursuant to the contract, S & W was to be compensated in Canadian dollars, and Canadian law was to control the contract. Purchase Order, Terms and Conditions, p. 3, par. 12. The contract also deleted reference to United States law, including OSHA and Equal Opportunity compliance. *Id.* at pars.

---

1. The Belledune Power Plant was located in New Brunswick, Canada.

10, 11. Additionally, all of the work performed by S & W occurred in Canada. Furthermore, the contract stated that all of the documents (drawings, data sheets, manuals, et cetera), prepared by S & W in Canada, be sent to Pullman's Pittsburgh office.[2]

Regarding the contract, there was a November 30, 1989 meeting in Pittsburgh[3] and a meeting in New Brunswick, Canada; there were no other meetings in Pennsylvania.

After forwarding the purchase order to S & W, Pullman issued a purchase order to Basic, which required Basic to design, fabricate, supply and deliver the fabricated pipe supports for the piping that Pullman had contracted to design, supply and install.

Pullman alleges that Basic utilized engineering calculations and loads, which were developed by S & W pursuant to the purchase order from Pullman.

During the course of S & W's seven years of work under the purchase order, there were numerous telephone calls between S & W (in Canada) and Pullman (in Pittsburgh).

Pullman alleged that the pipe supports designed (based upon the calculations and loads developed by S & W) and supplied by Basic were unable to withstand the loads and stresses of the power piping system under operating conditions; Pullman alleges that some of the pipe supports deformed, deflected and failed prior to the power plant reaching full operating temperature and pressure. Pullman further alleged that since S & W failed to properly analyze the piping system and Basic failed to properly design the pipe supports, some pipe supports had to be added, modified or replaced, at a substantial cost to Pullman. Accordingly, on August 13, 1996 Pullman initiated the instant lawsuit against S & W and Basic.[4] The claims against S & W included breach of contract for engineering and design of the power plant, breach of warranty and negligence.

On September 16, 1996 S & W filed preliminary objections to Pullman's complaint, alleging that there was no personal jurisdiction (specific or general) over S & W in Pennsylvania; on December 6, 1996 oral argument was held regarding the preliminary objections. Basic then filed its amended answer asserting, *inter alia*, a cross-claim against S & W.[5]

On June 26, 1997 the Honorable Robert C. Gallo of the Court of Common Pleas of Allegheny County sustained S & W's preliminary objections and dismissed the case against S & W.[6]

On July 7, 1997 Pullman presented an application, pursuant to Pa.R.A.P. 341, to amend Judge Gallo's June 26, 1997 order. S & W filed an opposition to Pullman's application. On July 15, 1997, Judge Gallo issued an order amending his June 26, 1997 order, providing that, "It is expressly determined that an immediate appeal of this Order would facilitate resolution of the entire case." Trial Court Order, 7/15/97.

Pullman then filed an appeal to this Court (at No. 1529 Pittsburgh 1997) challenging Judge Gallo's June 26, 1997 order, which

2. S & W does have a sister corporation, Stone & Webster Engineering Corporation ("SWEC"), which conducts engineering operations in the United States. SWEC is incorporated in Massachusetts and is an independent entity, but it was not involved in the instant contract.

From 1978 through 1987, pursuant to an Engineering Services Scope of Work ("ESSOW"), S & W performed work for SWEC on Duquesne Light Company's Beaver Valley Nuclear Facility ("the Beaver Facility") in Pennsylvania. S & W was to perform design work and analysis for SWEC. Although the majority of the work was to be performed in Toronto, Canada, the ESSOW also provided for S & W's employees to be loaned to SWEC, on an as-needed basis for support at the Beaver Facility. Only 15–20% of S & W's work for SWEC was performed on-site at the Beaver Facility.

3. Also at the meeting were representatives of Basic and of Connex Pipe Systems, Inc. ("Connex"), to whom Pullman had contracted the pipe fabrication and supplying for the project; Connex was a wholly owned subsidiary of a Pennsylvania holding company.

4. Prior to the institution of the instant action, Pullman sued S & W and other parties in the Court of Queen's Bench of New Brunswick, Canada. The claims in that action are nearly identical to those of the instant case.

5. Basic subsequently joined in Pullman's opposition to S & W's preliminary objections.

6. Judge Gallo's order did not resolve Pullman's claims against Basic.

sustained S & W's preliminary objections and dismissed Pullman's case against S & W.

On July 4, 1997 S & W filed the instant appeal (at No. 1660 Pittsburgh 1997).

S & W's issues on appeal are as follows:

1(a). The trial court erred in certifying this matter for immediate appeal under Pa.R.A.P. 341(c).

1(b). Because the trial court made no findings of extraordinary circumstances or injustice which a later appeal cannot correct, certification of this matter for immediate appeal under Pa.R.A.P. 341(c) was erroneous.

S & W's Brief at 15, 18. We reverse the trial court order.

Pa.R.A.P. 341 states, in pertinent part,

**Rule 341. Final Order; Generally**

**(a) General Rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of Final Order.** A final order is any order that:

(1) disposes of all claims or of all parties; or

(2) any order entered that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subsection (c) of this rule.

**(c)** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order.

. . . .

*Id.*

The Official Note to Rule 341 states, in pertinent part,

Subdivision (c) permits an immediate appeal from an order dismissing less than all claims or parties from a case only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Factors to be considered under Subdivision (c) include, but are not limited to:

(1) whether there is a significant relationship between adjudicated and unadjudicated claims;

(2) whether there is a possibility that an appeal would be mooted by further developments;

(3) whether there is a possibility that the court or administrative agency will consider issues a second time;

(4) whether an immediate appeal will enhance prospects of settlement.

*Id.*

"Rule 341 is fundamental to the exercise of jurisdiction by this court." *Prelude, Inc. v. Jorcyk*, 695 A.2d 422, 424 (1997). "It is not surprising, therefore, that the rule has been rigorously applied." *Id.*

Our Court stated in *Liberty State Bank v. Northeastern Bank of Pennsylvania*, 453 Pa.Super. 231, 683 A.2d 889 (1996),

A determination that an immediate appeal of a non-final order is appropriate should be made only in the most extraordinary circumstances because such action would frustrate the amendments to the Rule. The revisions to the Rule were designed to eliminate the confusion created by the prior case law and to prevent piecemeal appeals which unnecessarily result in delay. [Citation omitted.]

*Id.* 683 A.2d at 890.

 When a trial court order does not dispose of all of the claims or parties, and no statute expressly defines the type of order as final, the trial court order is not final pursuant to Rule 341(b)(1) or (2). *McKinney v. Albright*, 429 Pa.Super. 440, 632 A.2d 937 (1993). An appeal may not be taken from an

order dismissing less than all claims or all parties from a case. *Id.* "The mere fact that some of the parties have been dismissed from a case, or that some of the counts of a multi-count complaint have been dismissed is insufficient reason to classify an order as final." *Id.* 632 A.2d at 939. "While the comment to Rule 341 suggests areas where certification may be appropriate, courts are cautioned to refuse to classify orders as final except where the failure to do so would result in an injustice which a later appeal can not correct." *Id.*

■ We note that the panels in *Liberty State Bank* and *McKinney* did not rely upon the aforementioned requirements (i.e., that certification should only be made in the "most extraordinary circumstances"; courts should refuse to classify orders "except where the failure to do so would result in an injustice which a later appeal can not correct") in reversing trial court orders certifying cases for appeal to this Court; hence, the "requirements" were simply dicta in those cases. Additionally, we are not bound by the Official Note to Rule 341, *supra*, which states that the trial court should consider at least four factors in deciding whether to certify a non-final order for immediate appeal. However, we agree that the trial court should consider at least the four factors mentioned in the Official Note to Rule 341, and that the trial court should only certify a non-final order for immediate appeal in "the most extraordinary circumstances" and "where the failure to do so would result in an injustice which a later appeal can not correct." *Liberty State Bank v. Northeastern Bank of Pennsylvania, supra* at 890; *McKinney v. Albright, supra* at 939. Accordingly, we find that the aforementioned factors and requirements should be considered and met before a trial court may certify, pursuant to Pa.R.A.P. 341(c), a non-final order for immediate appeal to this Court.

■ In the instant case the trial court dismissed Pullman's claim against S & W, and Basic's cross-claim against S & W. The claims that remained were Pullman's claim against Basic, and Basic's counterclaim against Pullman. Hence, according to Pa. R.A.P 341(a) and (b), the trial court's June 26, 1997 order was not a final order. *McKinney v. Albright, supra.* However, the trial court determined, pursuant to Rule 341(c), that "an immediate appeal of this Order would facilitate resolution of the entire case." Trial Court Order, 7/15/97. The trial court provided no rationale for its order certifying this case for immediate appeal; it did not specifically find extraordinary circumstances and it did not specifically find that a failure to classify its order as final would result in an injustice which a later appeal could not correct. *Id.; Liberty State Bank v. Northeastern Bank of Pennsylvania, supra.*

There is not a significant relationship between Pullman's claims against S & W and Pullman's claims against Basic; Pullman's claims against the two entities are different. Therefore, allowing Pullman's claims against Basic to proceed, while deferring a decision regarding Pullman's claims against S & W, would not negatively impact Pullman's lawsuits.

The outcome of Pullman's lawsuit against Basic would not preclude Pullman's pursuance of its lawsuit against S & W since different claims were involved.

There is the possibility that a court will have to consider the jurisdictional issue again if an immediate appeal is not permitted at this time; however, the failure to consider the issue at this time will not result in an injustice to Pullman that a later appeal cannot correct.

Finally, regarding whether allowing the instant appeal will enhance the prospects of a settlement, a finding that Pullman does have jurisdiction over S & W in Pennsylvania might cause S & W to consider settling (rather than being subjected to a lawsuit in Pittsburgh), but a quashal of Pullman's lawsuit against S & W in Pennsylvania (pursuant to a finding of no jurisdiction) would encourage Pullman to settle (rather that continuing to pursue its pending lawsuit against S & W in New Brunswick, Ontario, Canada). Thus, settlement may be encouraged regardless of whether this Court decides the jurisdictional issue at this time.

Based upon (a) our aforementioned findings regarding the four factors that the trial

court should have considered, pursuant to the Official Note to Pa.R.A.P. 341, in determining whether to certify this case for immediate appeal to this Court; (b) the trial court's failure to demonstrate that extraordinary circumstances justified an immediate appeal in this case; and, (c) the trial court's failure to demonstrate that refusal to classify the June 26, 1997 order would result in an injustice which a later appeal cannot correct, we find that the trial court erred in determining that an immediate appeal would facilitate resolution of the entire case. *Prelude, Inc. v. Jorcyk, supra; Liberty State Bank v. Northeastern Bank of Pennsylvania, supra; McKinney v. Albright, supra.* Therefore, we reverse the trial court's July 15, 1997 order certifying Pullman's jurisdictional claims, at No. 1529 Pittsburgh 1997, for immediate appeal to this Court pursuant to Pa.R.A.P 341(c).[7]

Order reversed.

---

**7.** The effect of our reversal of the trial court's July 15, 1997 order will be a quashal of Pullman's appeal at No. 1529 Pittsburgh 1997. This

matter will be addressed in a Memorandum Opinion regarding that case.