**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., Appellees.**

Supreme Court of Pennsylvania.

Jan. 20, 2000.

## ORDER

PER CURIAM.

**AND NOW,** this 20th day of January, 2000, the Order of the Commonwealth Court is affirmed.

Albert **COOPERSMITH,** Individually and on Behalf of a class of all those similarly situated, Appellants,

v.

**COLONIAL PENN INSURANCE COMPANY, United States of America, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1999.
Filed Nov. 9, 1999.
Reargument denied Jan. 20, 2000.

Morris M. Shuster, Haverford, for appellant.

James T. Moughan, Plymouth Meeting and William T. Barker, Chicago, IL, for Colonial Penn Ins Co., appellee.

Cynthia L. Alexander, Washington, DC, for United States of America, amicus curiae.

Before POPOVICH, STEVENS and MUSMANNO, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Appellee Colonial Penn Insurance Company (Colonial Penn) and against Appellants Albert Coopersmith et al.[1] On appeal, Appellants contend (1) that the trial court erred in finding the state two-year statute of limitations period

1. This appeal was filed on behalf of the United States Government and each class member.

under the No–Fault Act[2] to be applicable, instead of the federal six-year statute of limitations period under 28 U.S.C. § 2415(a), and (2) that the trial court erred in determining that the limitations period began when the United States Government filed a claim in court. As such, Appellants argue that the trial court erred in denying Appellants' motion for summary judgment and granting Colonial Penn's cross-motion for summary judgment. We reverse and remand for the entry of summary judgment in favor of Appellants.

¶ 2 Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Payton v. Pennsylvania Sling Company*, 710 A.2d 1221 (Pa.Super.1998). We must review the record in the light most favorable to the adverse party and determine whether the moving party has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* Since an order favorable to the moving party will prematurely end an action, summary judgment is appropriate in only the clearest of cases. *Id.*

¶ 3 The parties agree that there is no genuine issue of material fact and that the pertinent facts are as follows: Individuals representing classes of similarly situated insureds brought actions against numerous insurance companies, including Colonial Penn. The cases were submitted to the trial court on cross-motions for summary judgment with stipulated facts.

¶ 4 From the stipulation, it was established that each plaintiff was injured in a motor vehicle accident occurring after December 5, 1980, and incurred certain medical expenses as a result. The plaintiffs were eligible to receive basic loss benefits for medical treatment under a no-fault insurance policy, pursuant to Pennsylvania's No–Fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101 *et seq.*, since repealed. In addition, the plaintiffs were eligible to receive Medicare benefits pursuant to 42 U.S.C. § 1395.

¶ 5 All of the plaintiffs' medical and other accident-related expenses were paid by Medicare and the insurers. Although the defendant insurers reimbursed the plaintiffs for excess medical and non-medical "basic loss" expenses, they argued that Medicare was the primary insurer for the medical expenses. Consequently, the insurers made no payment for medical expenses until a Medicare disposition was received, and then only to the extent that Medicare had not paid. The plaintiffs filed actions to recover the unpaid no-fault medical benefits and interest accrued thereon.

¶ 6 Following the granting of summary judgment in favor of the plaintiffs, an appeal was filed to this Court. We affirmed the trial court's granting of summary judgment and held that the insurers were primarily liable for plaintiffs' claims and that Medicare was secondarily liable. As such, we held that the insurers were liable to the plaintiffs for the full amount of expenses paid by Medicare on behalf of the plaintiffs, to their respective policy limits. *Collins v. Allstate Indemnity Company*, 426 Pa.Super. 197, 626 A.2d 1162 (1993). Moreover, the plaintiffs were ordered to reimburse the appropriate Medicare Trust Fund upon receipt of payment made by the insurers. *Collins, supra.* A petition for allowance of appeal was filed with the Pennsylvania Supreme Court, which affirmed without an opinion.

¶ 7 On January 3, 1996, the Court of Common Pleas entered a certification order pursuant to a stipulation by the parties. The order certified a mandatory class of Colonial Penn[3] insureds who were injured in motor vehicle accidents between December 5, 1980, and June 5, 1983, for whom Colonial Penn had refused to pay medical expenses on the basis that Medicare was primarily responsible for the expenses. Thereafter, the parties engaged

---

2.  40 P.S. §§ 1009.101 *et seq.*

3.  Colonial Penn was an appellant in *Collins, supra.*

in discovery to determine the "scope of damages," that is, the amount of damages owed to plaintiffs, which would require reimbursement to Medicare, pursuant to our decision in *Collins, supra.* During the process, it became clear that the amount of damages to be paid by Colonial Penn depended upon whether the state two-year statute of limitations under the No–Fault Act is applicable or whether the federal six-year statute of limitations under 28 U.S.C. § 2415(a) is applicable. If the state two-year limitations period is applicable, plaintiffs' claims were not timely filed; however, if the federal six-year limitations period is applicable, all class claims are timely.

¶ 8 To resolve the dispute, the parties filed cross-motions for summary judgment. A joint motion for partial summary judgment on behalf of the United States was filed by Albert Coopersmith and each class representative plaintiff in the cases against Liberty Mutual Insurance Company, State Farm Mutual Automobile Insurance Company, Colonial Penn, and Allstate Insurance Company. The insurers opposed the plaintiffs' joint motion. However, only Colonial Penn filed a cross-motion for summary judgment using the class claim of one of its insureds, Esther Schofield, as a test case.[4] The motions filed by Appellants urged that the cases were governed by the federal six-year limitation period, while Colonial Penn's motion and brief urged that the state two-year limitations period governed.[5]

¶ 9 On October 16, 1998, the trial court entered an order granting Colonial Penn's motion for summary judgment and denying Appellants' motion for partial summary judgment on behalf of the United States. The trial court's order was based on its conclusion that the state two-year limitations period was applicable. On November 5, 1998, the trial court entered two separate orders: one of the orders again denied Appellants' motion for partial summary judgment; the other order reiterated the granting of Colonial Penn's summary judgment motion and certified this case for immediate appeal pursuant to Pa. R.A.P. 341(c).[6] This timely appeal followed.[7]

¶ 10 It is clear that pursuant to 28 U.S.C. § 2415(a) the federal government could have sued Colonial Penn in its own right. Under Section 2415(a), the federal government may sue for money damages under a private contract; however, any claims made under the contract are barred unless they are "filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceed-

---

**4.** It is undisputed that Ms. Schofield was injured in an automobile accident on January 31, 1981. At the time of the accident, she was an insured under a No–Fault policy with Colonial Penn and she was eligible for Medicare. Medicare paid Ms. Schofield $1,229.19, as a primary insurer, and, thereafter, Colonial Penn paid Ms. Schofield $524.86, as a secondary insurer. Ms. Schofield received her last payment of no-fault benefits from Colonial Penn on July 28, 1981, but she did not file her lawsuit until April 19, 1984, more than two years later.

**5.** The parties agree that Ms. Schofield's claim was filed before the six-year federal limitations had expired, but after the state two-year limitations period had expired.

**6.** In its order, the trial court stated the following:

Pursuant to Rule 341(c) of the Pennsylvania Rules of Appellate Procedure, this Order is certified as a Final Order as to one or more but fewer than all claims or parties and this Court has made the express determination that an immediate appeal would facilitate resolution of the entire case because this Order effectively bars the claims of all class members similarly situated to class member, Ester Schofield.

Trial Court Order dated 11/5/98. We find that this is sufficient to permit our review. *See Pullman Power Products of Canada Limited v. Basic Engineers, Inc.,* 713 A.2d 1169 (Pa.Super.1998).

**7.** The record reveals that the trial court did not order Appellants to file a Pa.R.A.P.1925(b) Statement and that no such statement was filed. However, the trial court filed an opinion concerning the issues raised on appeal.

ings...." 28 U.S.C. § 2415(a). It is undisputed that the federal government did not file its own claim for reimbursement under Section 2415(a); rather, it sought reimbursement through subrogation.

¶ 11 In determining the federal government's subrogation rights and the applicable statute of limitations,[8] the trial court relied on *United States v. California*, 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993), and determined that the state two-year statute of limitations was applicable. Specifically, the trial court concluded that Ms. Schofield's claim was subject to the state two-year statute of limitations under the No–Fault Act; that the federal government had an equitable right to subrogation from Ms. Schofield, and, therefore, the federal government "stood in the shoes of Ms. Schofield for statute of limitations purposes;" that the federal government was not subrogated into Ms. Schofield's claim by operation of federal statute, and, therefore, *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), was not controlling; and that the limitations period commenced when the class action was filed.

■ ¶ 12 On appeal, Appellants argue (1) that the case *sub judice* is distinguishable from *California*, which applied the state limitations period, and is more akin to *Summerlin*, which applied the federal limitations period; (2) that the federal government acquired its claim when it made the Medicare payment to Ms. Schofield; and (3) that the trial court's consideration of numerous equitable factors does not support the imposition of the state two-year statute of limitations.

¶ 3 With regard to Appellants' first claim, we find it necessary to review the United States Supreme Court's decisions in *Summerlin, supra,* and *California, supra.*

8. As will be discussed *infra,* the rules of subrogation do not necessarily apply to the federal government. *See United States v. Califor-*

¶ 14 In *Summerlin*, the Federal Housing Authority Administrator (the FHA), acting on behalf of the federal government, became the assignee of a promissory note executed under the National Housing Act after a default by the debtor. *Id.* at 414–415, 60 S.Ct. 1019. After the death of the debtor, the adminstratrix of his estate gave notice by publication that creditors of the estate had eight months, as provided by state statute, to file proof of their claims. *Id.* at 415, 60 S.Ct. 1019. The FHA filed its claim eleven months later and the state supreme court held that the claim was void because it was not filed within the state statutory period. On appeal, the United States Supreme Court held that "it is well settled that the United States is not bound by state statutes of limitation...in enforcing its rights." *Id.* at 416, 60 S.Ct. 1019 (*citing Guaranty Trust Company v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)) (citations omitted). The Court stated that "when the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.* at 417, 60 S.Ct. 1019. The Supreme Court concluded that if the state statute "undertakes to invalidate the claim of the United States, so that it cannot be enforced at all, ... we think the statute in that sense transgressed the limits of state power." *Id.* at 417, 60 S.Ct. 1019.

¶ 15 In *California*, the United States Supreme Court was again faced with the issue of whether the federal government is subject to a state's statute of limitations. In *California*, the State of California assessed sales and use taxes against property purchased by a private contractor who had been hired by the United States to manage oil-drilling operations on government land. The contractor paid the taxes

*nia,* 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993).

under protest with funds advanced by the federal government. *Id.* at 748–749, 113 S.Ct. 1784. Subsequently, and after the state statute of limitations had run on tax refund suits, the United States filed an action seeking to establish that the taxed property was exempt under the federal statute of limitations. *Id.* at 749–750, 113 S.Ct. 1784. The United States Supreme Court held that the action was time-barred by California law. *Id.* at 758–759, 113 S.Ct. 1784. The Court specifically distinguished the *California* case from *Summerlin* on the basis that the claim on which the United States sued in *Summerlin* had been received by assignment pursuant to a federal statute, the National Housing Act, and, therefore, the federal government was acting in its sovereign capacity. *Id.* at 757–758, 113 S.Ct. 1784. In contrast, in *California,* the federal government was acting in its individual or proprietary capacity.

▇ ¶ 16 We conclude that the case *sub judice* is more akin to *Summerlin* than to *California* because the federal government's claim rises under a federal statute, i.e. Medicare, and, therefore, the federal government was acting in its sovereign capacity when it sought reimbursement through subrogation. As such, the trial court erred in finding the state two-year statute of limitation to be applicable. Rather, we agree with Appellants that the six-year statute of limitations under 28 U.S.C. § 2415(a) is applicable.[9] However, this does not end our inquiry, as we must determine when the federal six-year limitations period commenced.

▇ ¶ 17 In *Federal Deposit Insurance Corporation v. Hinkson,* 848 F.2d 432 (3 rd Cir.1988), the Third Circuit was asked to determine whether a state or federal statute of limitations was applicable in an assignment case.[10] After determining that the limitations period found in 28 U.S.C. § 2415(a) was applicable, the court was faced with the issue of when the limitations period commenced. In analyzing the issue, the Court stated the following:

> When a claim originally grows out of a direct relationship with the federal government, no particular problem arises. Application of the general rules on accrual will comport with the congressional intent of uniformity and prompt disposition of claims.
>
> The inquiry, however, is not as simple when the United States or a federal agency comes into possession of claims by assignment, the case here. In that circumstance, where the actionable event occurs during the time the claim belonged to the private party assignor, accrual could begin either then or later when the cause of action is assigned to the federal government.

*Hinkson,* 848 F.2d at 434. The Third Circuit held that the limitations begins to run when "the [G]overnment acquires the cause of action . . . ." *Id.*

¶ 18 In the case *sub judice,* the federal government acquired its claim when it made the Medicare payment to Ms. Scho-

---

9. We note that our decision is supported by the United States Supreme Court's decision in *Guaranty Trust Company v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938), in which the Supreme Court indicated that if the state statute of limitations expires before the federal government acquires a claim, it is not revived by transfer to a federal agency. However, if the federal government acquires a claim from a private party before the state statute of limitations expires, the federal statute of limitations begins to apply at that time. *See Federal Deposit Insurance Corporation v. Hinkson,* 848 F.2d 432 (3 rd Cir.1988). As will be discussed *infra,* we conclude that the

federal government acquired the claim when it made the Medicare payment, which was before the state two-year statute of limitations expired.

10. We are not bound by federal intermediate appellate court decisions. However, where the Third Circuit has spoken on a federal issue, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate for [us] to follow the Third Circuit decision. *Nobers v. Crucible, Inc.,* 431 Pa.Super. 398, 636 A.2d 1146 (1994).

field. When the payment was made, the federal government could have filed a lawsuit in the lower court contesting whether it was primarily or secondarily liable for the medical expenses at issue. As such, the trial court erred in concluding that the limitations period commenced when the class action was filed in this case.

¶ 19 Finally, we agree with Appellants that the trial court's consideration of numerous equitable factors does not support the imposition of the state two-year statute of limitations. In its opinion, the trial court indicated that the shorter state limitations should apply because of unfair surprise to the insurers and because the federal government had "unclean hands." Both of these conclusions are based on the fact that the federal government failed to file its own claim and relied on subrogation instead. However, as the United States Supreme Court has indicated, it is proper for the federal government to seek assignment and subrogation of private party claims. As such, the trial court's conclusion that unfair surprise and "unclean hands" exists when the federal government seeks subrogation is incorrect in this case.

¶ 20 For all of the foregoing reasons, we find that the trial court erred in entering summary judgment in favor of Colonial Penn and that summary judgment should have been entered in favor of Appellants. Accordingly, we remand this case and direct the trial court to enter summary judgment in favor of Appellants.[11]

¶ 21 Reversed; remanded; jurisdiction relinquished.

---

11. The parties agree that if the six-year statute of limitations is applicable, and the federal government acquired its claim when the Medicare payment was made, the claims made on behalf of the government are timely.