**GUSTINE UNIONTOWN ASSOCIATES, LTD., a Pennsylvania Limited Partnership, By and Through GUSTINE UNIONTOWN, INC., General Partner, Appellants**

v.

**ANTHONY CRANE RENTAL, INC., Anthony Crane Rental, L.P., Architectural Services Group, Inc., Construction Engineering Consultants, Inc., Geo-Mechanics, Inc., Jabille Development Corporation, Mascaro Incorporated, McMillen Engineering, Inc., P.C. Yezbak & Son, Inc., Penn Transportation Services, Inc., Ruprecht, Schroeder & Hoffman, Architects, S & R Restaurants, Inc., and Wendy's of Greater Pittsburgh, Inc., Appellees**

v.

Gustine Uniontown, Inc., the Gustine Company, Inc., BSW Architects and Thor Concrete Construction, Inc., Appellees.

Superior Court of Pennsylvania.

Argued July 31, 2001.

Filed Oct. 29, 2001.

Reargument Denied Jan. 4, 2002.

---

4. This is especially true in light of Appellee's   departure at the onset of fiscal year 2000.

Edward B. Gentilcore, Pittsburgh, for appellant.

Bethann Lloyd, Pittsburgh, for GeoMechanics, appellee.

Robert J. Blumling, Pittsburgh, for Mascaro, appellee.

Dolores Innamorato, Pittsburgh, for Anthony Crane Rental, appellee.

Robert J. Ray, Pittsburgh, for Architectural Services Group, appellee.

Robert Burnette, Pittsburgh, for Constr. Engineering Consultants, appellee.

Michael J. McShea, Wexford, for Ruprecht, Shroeder & Hoffman Architects, appellee.

Before: CAVANAUGH, EAKIN and JOYCE, JJ.

CAVANAUGH, J.

¶ 1 This appeal is from two orders of the trial court entered on July 18, 2000, which determined the statute of limitations applicable to various claims raised in appellants' complaint and dismissed some, but not all of the claims, as time-barred. The court held that appellants' claims for breach of contract for latent defects in real estate construction are subject to a four-year statute of limitations and that appellants' claims for negligence and fraud are subject to a two-year statute of limitations. The

court certified that its rulings are immediately appealable pursuant to Pa.R.A.P. 341(c). After careful review, we conclude that appellants' breach of contract claims for latent construction defects are subject to a six-year statute of limitations. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

¶ 2 As a preliminary matter, we examine our jurisdiction to review the interlocutory orders at issue in this appeal. Unless an interlocutory appeal exists as of right, *see* Pa.R.A.P. 311, there are two procedural methods by which an interlocutory order in a civil case may be appealed to this court. These methods, which may appear similar at first blush, serve different purposes and differ from each other in several important respects.

¶ 3 The "ordinary" method for perfecting an interlocutory appeal exists under Chapter 13 of the Pennsylvania Rules of Appellate Procedure which provides that an appeal from an interlocutory order may be taken by permission. This method requires the trial court to certify, pursuant to 42 Pa.C.S. § 702(b), that its interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. Pa.R.A.P. 1311(b). If the court certifies the order using the specific language set forth above, then the appellate court may, in its discretion, permit an appeal to be taken from the interlocutory order.

¶ 4 The "extraordinary" method for perfecting an interlocutory appeal exists under Chapter 3 of the Rules of Appellate Procedure pertaining to final orders. Rule 341(c), as revised in 1992, describes a special form of final order and provides that:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.

¶ 5 This method of securing appellate review of an interlocutory order does not vest the appellate court with explicit discretion to grant or deny the appeal. If the trial court expressly states that an immediate appeal from an otherwise interlocutory order would facilitate resolution of the entire case, the order is entered as a final order and becomes immediately appealable as of right. Rule 341(c), in essence, allows the trial court to determine that a non-final order which is not fully dispositive of all claims be treated as a final order for appeal purposes.

¶ 6 Not surprisingly, given the potential for abuse, this method of obtaining review has been carefully scrutinized by the appellate courts. We have previously stated:

A determination that an immediate appeal of a non-final order is appropriate should be made only in the most extraordinary of circumstances because such action would frustrate the amendments to the Rule. The revisions to the Rule were designed to eliminate the confusion created by the prior case law and to prevent piecemeal appeals which unnecessarily result in delay.[1]

---

**1.** New Rule 341 became effective July 6, 1992, and is applicable to all actions commenced after that date. The Rule was intended to decrease the number and type of orders previously considered appealable as of right. Thus, the official note to Rule 341 sets forth a

*Liberty State Bank v. Northeastern Bank of Pa.*, 453 Pa.Super. 231, 683 A.2d 889, 890 (1996) (quoting *Robert H. McKinney, Jr., Associates, Inc. v. Albright*, 429 Pa.Super. 440, 632 A.2d 937, 939 (1993)).

¶ 7 In *Pullman Power Prod. of Can., Ltd. v. Basic Engineers, Inc.*, 713 A.2d 1169, (Pa.Super.1998), we reversed an order of the trial court which certified a non-final order for immediate appellate review under Rule 341(c). The trial court's order granted certain preliminary objections and dismissed one party to a multi-party complaint. The trial court, upon application, "expressly determined that an immediate appeal of this Order would facilitate resolution of the entire case." *Id.* at 1171. However, the trial court provided no specific rationale for its order certifying the case for immediate appeal. *Id.* at 1173. In reviewing the propriety of the trial court's certification of immediate appealability, we concluded that certain requirements must be met before such an order can be properly entered.

¶ 8 First, we found that a trial court must consider, at a minimum, the following factors suggested by the official note to Rule 341 when determining whether an immediate appeal of a non-final order would facilitate resolution of the entire case:

(1) whether there is a significant relationship between adjudicated and unadjudicated claims;

(2) whether there is a possibility that an appeal would be mooted by further developments;

(3) whether there is a possibility that the court or administrative agency will consider issues a second time; [and]

(4) whether an immediate appeal will enhance the prospects of settlement.

*Id.* at 1172 (quoting the official note to Rule 341).

¶ 9 Next, we concluded that after a trial court considers the above factors, it should "only certify a non-final order for immediate appeal in 'the most extraordinary circumstances' and 'where the failure to do so would result in an injustice which a later appeal can not correct.'" *Id.* at 1173 (citing *Liberty State Bank, supra* and *McKinney, supra*, 632 A.2d at 939 (Pa.Super.1993) ("while the comment to Rule 341 suggests areas where certification may be appropriate, courts are cautioned to refuse to classify orders as final except where the failure to do so would result in an injustice which a later appeal cannot correct")).

¶ 10 We now examine the instant certification of immediate appealability entered under Pa.R.A.P. 341(c). The certification order states that "after application of the appropriate standards and due deliberation thereon, it is hereby expressly determined that an immediate appeal of [the orders in question] would facilitate resolution of the entire case." There is no discussion as to what factors the court considered. There is no determination that the circumstances are extraordinary. There is no determination that a failure to certify the orders as immediately appealable would result in an injustice which could not be remedied on later appeal. The record certified to this court contains no transcript of the proceedings on the petition to certify the orders. All we have before us is the court's avowal that it applied the appropriate standards in reaching its determination of immediate appealability.

---

partial listing of orders previously interpreted by the courts as final, appealable orders under Rule 341 that are "no longer appealable as of right unless the trial court or administrative agency makes an express determination that that an immediate appeal would facilitate resolution of the entire case and expressly enters a final order pursuant to Rule 341(c)[.]"

¶ 11 We might conclude that the mere avowal of application of proper determinative factors is, without more, insufficient under the law to support the entry of an order certifying a non-final order as immediately appealable. However, upon careful consideration of the circumstances of this particular matter, we conclude that an immediate appeal may enhance the prospects of settlement and that a later appellate disposition might result in remand for duplicative and costly re-litigation of complex trial issues. Thus, we determine that the standard of extraordinary circumstances and potential injustice has been met despite the trial court's lack of an expressed rationale for its finding of immediate appealability. Having so concluded, we turn now to the relevant facts underlying the issues raised on appeal.

¶ 12 Appellants, Gustine Uniontown Associates and Gustine Uniontown, Inc., are the owners of a retail shopping center in Fayette County known as the Cherry Tree Square Mall. The mall, including buildings and parking areas, covers approximately 30 acres and contains a Wal–Mart store, a Foodland store, a Family Toy store, a Revco store and various other shops.

¶ 13 Construction of the mall began in May of 1992 and was substantially completed in September of 1993. The mall was built on land above a former coal mine. Subsurface investigation conducted in 1991 revealed the existence of carbonaceous shale layers in the ground. Carbonaceous shale often contains sulfide minerals such as pyrite which may expand when exposed to moisture and oxygen. Structures built on carbonaceous shale, therefore, are subject to possible damage in the form of heaving, buckling and cracking due to movement of the earth below the foundation. The existence of the carbonaceous shale and the risk of slight to appreciable structural damage based on mine overburden thickness was disclosed to Gustine from the beginning of the construction project.

¶ 14 In May of 1992, Gustine entered into a contract with appellee Architectural Services Group, Inc. (ASG). Under the contract, ASG was to design the site, i.e., draw plans, specifications, and supporting data necessary for construction of the mall. The agreement also required ASG to oversee the progress and quality of the construction process and "to guard the Owner against defects and deficiencies in the Work." The contract further provided at Article 9.3 as follows:

Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statute of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

¶ 15 A number of construction contractors and engineers were retained and the mall was built. Certificates were issued by ASG on September 8, 1993, showing that the structures built on the site had been substantially completed on various dates between June and September of 1993.

¶ 16 It appears that buckling or heaving of floor slabs in the mall began in April of 1995. Over a period of time, cracks also appeared in walls, sidewalks and parking areas. Gustine incurred expenses to remediate the structural damage and initiated the instant litigation by writ of summons on July 30, 1999. On January 27, 2000, Gustine filed a lengthy complaint consisting of 357 separate paragraphs which named 13 defendants (all appellees

herein) and included 30 separate counts for breach of contract, breach of implied warranty, breach of duty to negotiate in good faith and fair dealing, fraudulent misrepresentation, concealment and professional negligence. The complaint alleged that Gustine had incurred remediation costs in excess of one million dollars. The complaint also sought damages for lost profits.

¶ 17 Preliminary objections to the complaint were filed which asserted that Gustine's breach of contract claims were barred by a four-year statute of limitations and that Gustine's claims of fraud and negligence were barred by a two-year statute of limitations. Gustine responded by filing a lengthy "position statement" in support of application of a six-year statute of limitations to all claims raised in its complaint.

¶ 18 The court recognized that under the Rules of Civil Procedure, a statute of limitations defense is not ordinarily raised on preliminary objections but in an answer as new matter. Pa.R.C.P. 1028, 1030. Nonetheless, the court considered the affirmative defense at this earlier stage of the pleadings because it concluded that the potential availability of the discovery rule and/or repair doctrine to toll the limitations period would become a significant question to be litigated if a four-year limitation, rather than a six-year limitation, was applicable to the claims raised in the complaint.

¶ 19 By order entered July 18, 2000, the court held as follows:

(1) the six year limitation period of 42 Pa.C.S. § 5527 does not govern any of plaintiff's causes of action;

(2) plaintiff's actions based on a contract, including a contract implied in law, are governed by a four year limitations period;

(3) plaintiff's tort actions are covered by the two year limitation period of 42 Pa. C.S. § 5524; and

(4) defendants' requests that I dismiss claims based on the statute of limitations are overruled because at this stage of the proceedings I cannot determine whether the limitations periods were tolled through the discovery rule and/or repair doctrine.

¶ 20 By separate order, also filed July 18, 2000, the court dismissed all claims against ASG raised in Gustine's complaint on the basis that article 9.3 of their agreement fixed the accrual date for Gustine's claims at September 8, 1993, more than four years prior to the filing of Gustine's writ of summons.[2]

¶ 21 Gustine's request for certification of immediate appealability was granted by the trial court and we are now presented with a question which the parties and the court advance as an issue of first impression: whether our jurisprudence compels "application of a six (6) year statute of limitation to claims arising out of a construction project[?]" The resolution of this issue requires an examination of the 1982 legislative amendment of the applicable statute of limitations contained in 42 Pa.C.S. §§ 5524, 5525 and 5527, as well as

**2.** The order also dismissed all counts in the complaint against all defendants which alleged breach of good faith and fair dealing because these are not independent causes of action. There are no issues before us regarding this aspect of the court's ruling.

It bears emphasis that, with the exception of ASG, the court has not ruled on the merits of the appellees' statute of limitations defenses. As its order makes clear, the court is reserving consideration of these defenses in light of the potential applicability of various tolling doctrines pending appellate resolution of which limitations periods control the claims raised.

this court's holding in *Romeo & Sons, Inc. v. P.C. Yezbak & Son,* 421 Pa.Super. 333, 617 A.2d 1320 (1992) (hereinafter *Romeo I*) and our supreme court's opinion in affirmance of *Romeo I* at 539 Pa. 390, 652 A.2d 830 (1995) (hereinafter *Romeo II*).

¶ 22 Prior to 1982, the limitations period applicable to causes of action based upon a contract was six years as set forth at former section 5527(2) of the Judicial Code On Periods Of Limitation:

The following actions and proceedings must be commenced within six years:

. . . .

(2) An action upon a contract, obligation or liability founded upon a bond, note or other instrument in writing, except an action subject to another limitation specified in this subchapter.

42 Pa.C.S. § 5527(2) (1980); *see also Romeo II, supra,* 652 A.2d at 832.

¶ 23 By 1982, the legislature, with the purpose and intent of rationalizing and simplifying the statutes of limitation, established a single period of limitation for related actions wherever possible and in 1982, the legislature reduced the limitations period for actions upon contracts from six years to four years. *See Crisante v. J.H. Beers,* 297 Pa.Super. 337, 443 A.2d 1150, 1152–53 (1982); *see also Romeo II, supra,* 652 A.2d at 831 n. 3. The Judicial Code, as amended, now provides that:

The following actions and proceedings must be commenced within four years:

. . . .

(8) an action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

42 Pa.C.S. § 5525(8) (added 1982, Dec. 20, P.L. 1409, No. 326, art. II, § 201, effective in 60 days). The amended code additional-

ly contains a "catchall" provision as follows:

### § 5527. Six year limitation

Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be ' commenced within six years.

42 Pa.C.S. § 5527 (amended 1982, Dec. 20, P.L. 1409, No. 326, art. II, § 201, effective in 60 days).

¶ 24 We move now to a recitation of the facts under which the decisions in *Romeo I* and *Romeo II* arose as summarized by our supreme court:

On August 13, 1979, appellant, P.C. Yezbak & Son, Inc. ("Yezbak"), entered into a written contract to construct a warehouse/office building for appellee, Romeo & Sons, Inc. ("Romeo"). The construction of the building was completed in July 1980. Subsequently, in September 1980, Romeo noticed structural defects in the building's floors, gutters and downspouts. Romeo reported these defects to Yezbak, who attempted repairs. Yezbak ceased repair efforts in October 1984.

On May 30, 1986, Romeo filed a complaint against Yezbak, alleging negligence, breach of express and implied warranties, and breach of contract. The trial court granted Yezbak's motion for summary judgment, concluding that the current, four-year statute of limitations was applicable to claims involving latent construction defects. 42 Pa.C.S. § 5525 (1982) (amending 42 Pa.C.S. § 5525 (1980)). The Superior Court reversed and remanded, concluding that a six-year statute of limitations controlled this case and all construction contract scenarios. 42 Pa.C.S. § 5527 (1982)

(amending 42 Pa.C.S. § 5527 (1980)); [*Romeo I*] 421 Pa.Super. 333, 617 A.2d 1320 (1992). For the reasons that follow, we affirm the Superior Court's conclusion that Romeo's complaint is not barred by the statute of limitations, but write to clarify the court's application of 42 Pa.C.S. 5527 (1982) to the instant facts.

*Romeo II*, 652 A.2d at 831–32 (footnotes and citations to the record omitted).

¶ 25 In *Romeo I*, this court concluded that a six-year statute of limitations applied to Romeo's claims under the catch-all provision of the 1982 amendments to the Judicial Code at Section 5527. We reasoned that a six-year statute of limitations was a more realistic and reasonable time bar for real estate construction contracts than the general four-year limitations period applicable to contracts for the sale, construction or furnishing of tangible personal property because prompt identification of structural defects in real estate construction is "oftentimes difficult[.]" *Romeo I*, 617 A.2d at 1322–23. We held that:

> In the interest of fair play and in light of the expected long-term life span of a house or commercial structure and the builder's attendant ethical and legal responsibilities to its customer, we find the purchaser and his investment must be afforded the six years of protection provided by section 5527. To find otherwise would be grossly unfair to the buyer, who routinely expends large sums of money in the hope of securing a structurally and financially sound investment. Therefore, we find the statute of limitations applicable to the construction contract controversy with which we are faced is section 5527 [six-year limitations period].

*Id.* at 1323.

¶ 26 It is clear from any reading of *Romeo II*, that our supreme court held that this court's analysis was incomplete. Our supreme court found that a six-year limitations period on Romeo's claims was applicable because the contract action between Romeo and Yezbak accrued in 1980, prior to the enactment of the amendments which reduced the limitations period for actions based on a contract, generally, from six years to four. Thus, the supreme court in *Romeo II* affirmed this court's decision in *Romeo I* on entirely different grounds while it left open the wisdom of the superior court's reasoning under the amended statute.

¶ 27 Against this back-drop we now must decide whether contract claims alleging latent construction defects accruing after the 1982 amendments are subject to the four-year statute of limitations as set forth in 42 Pa.C.S. § 5525(8) or whether such claims are subject to the six-year limitations period set forth in the catch-all provision at 42 Pa.C.S. § 5527.

■ ¶ 28 Although subsection one of the four-year statute of limitations for contract actions at 42 Pa.C.S. § 5525 expressly includes contracts for construction of tangible *personal* property or fixtures, none of the subsections of the four-year statute of limitations for contract actions expressly includes contracts for the sale or construction of *real* property. As we pointed out in *Romeo I*, this court has historically held that contracts for construction of residential homes and commercial real estate are not contracts for "sale" governed by the Uniform Commercial Code and the corresponding four-year statute of limitations. *Romeo I*, at 1322 (citing *DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355 (1975)). Further, it is clear that the limitations period for an "action for specific performance of a contract for sale of real property or for damages for noncompli-

ance therewith[,]" is five years. 42 Pa.C.S. § 5526(2).

[O]ur rules of statutory construction make clear that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). 1 Pa.C.S. § 1921(a). Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words. Where however, the statute is unclear or susceptible of different interpretations, the courts must look to the necessity of the act, the object to be attained, the circumstances under which it was enacted and any legislative or administrative interpretations thereof. *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72 (1989). In ascertaining the legislative intent of a particular statute it is presumed, *inter alia,* that the legislature did not intend a result that is absurd or unreasonable nor one that would be violative of the United States Constitution or the Constitution of the Commonwealth. It is also presumed that the legislature intends to favor the public interest as opposed to any private interest.

*Blackman v. Wright,* 716 A.2d 648, 651 (Pa.Super.1998) (quoting *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995)). The provisions of a statute are to be interpreted, whenever possible, in a manner that gives effect to the entire statute. *Id.* at 651–52 (citing *Hodges v. Rodriguez,* 435 Pa.Super. 360, 645 A.2d 1340, 1345 (1994)).

■ ¶ 29 After careful review of the entirety of Chapter 55, we conclude that the legislature did not intend the absurd result that an action seeking specific performance of a real estate sales contract or damages due to the vendor's failure to deliver good title would be subject to a longer limitations period than a contract action alleging latent defects in the real estate's construction. Further, we are in full agreement with the rationale, policy principles and considerations of fairness and legal and ethical responsibilities set forth in *Romeo I* supporting application of a six-year statute of limitations. These considerations include the frequently complex, costly and permanent nature of real estate construction projects as well as the legislature's lack of specific language in the statute which would expressly apply a four-year limitations period to contract actions for the construction of real estate. To the reasons given for a more generous limitations period we would add, the difficulty in ascertaining presumptive responsibility for construction defects or failures, as well as the inevitable delays involved in negotiations for, and performing attempts at remediation or repair. Thus, we hold that contract actions alleging latent real estate construction defects are governed by the six-year statute of limitations set forth by the legislature at 42 Pa.C.S. § 5527.

■ ¶ 30 We turn now to Gustine's allegation that the court erred in holding that a two-year statute of limitations is applicable to its claims for negligence and fraud. Gustine appears to allege that these claims should also be governed by the six-year statute of limitations pursuant to 42 Pa. C.S. § 5527 because they arise out of a construction contract negligently and/or fraudulently performed or created. We disagree.

¶ 31 First, Gustine does not appear to contend that its fraud and negligence claims are so steeped in both contract and tort law that the catch-all provision should apply because the cause of action is a novel hybrid contract-tort claim for which no

specific statute of limitations exists. Rather, Gustine appears to concede that its claims sound in either contract or tort. The language of the statute is clear and unmistakable and compels the conclusion that such claims are subject to a two-year limitation:

### § 5524. Two-year limitation

The following actions and proceedings must be commenced within two years:

. . . .

(4) an action for waste or trespass of real property;

. . . .

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S. § 5524(4) and (7) (amended 1982, Dec. 20, P.L. 1409, No. 326, art. II, § 201, effective in 60 days). We make no finding with respect to any claim in Gustine's brief that appellees are estopped from raising the statute of limitations defense to Gustine's fraud or concealment claims as that issue has not been certified for immediate appeal and is, in any event, more properly reserved for the trial court's consideration in the first instance.

¶ 32 In conclusion, we reverse the court's finding that a four-year statute of limitations is applicable to Gustine's contract claims for latent real estate construction defects. We hold that a six-year limitations period is applicable. We reverse the court's dismissal of ASG from the action which was based on the conclusion that all of Gustine's claims against it are time-barred. Given our disposition, we need not address the propriety of the court's enforcement of Article 9.3 of Gustine's contract with ASG as the initiation of suit was commenced within six years of the apparent date of accrual of claims contemplated by the provision. We affirm the court's finding that a two-year statute of limitations is applicable to Gustine's claims sounding in fraud and negligence. We remand the matter for proceedings consistent with this opinion and we relinquish jurisdiction.

¶ 33 Affirmed in part, reversed in part and remanded. Jurisdiction is relinquished.